In re INVESTORS & LENDERS, LTD., Debtor.

OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF INVESTORS & LENDERS, LTD., Plaintiff,

v.

Thornton S. FIELD, Sr., et al., Defendants.

Bankruptcy No. 92–30754.
Adv. No. 93–3294TS.

United States Bankruptcy Court, D. New Jersey.

March 24, 1994.

Michael J. Lerner, James Lawlor, Crummy, Del Deo, Dolan, Griffinger & Vecchione, Newark, NJ, for plaintiff.

Howard Schmidt, Sayreville, NJ, for defendant Nancy Yanosh.

James B. Brown, Shore and Zahn, East Brunswick, NJ, for defendants Flomerfelt, Flynn and Butler.

Donald Veix, Jr., Mason, Griffin & Pierson, Princeton, NJ, for defendants Feit, Field, Glass, Schell, Sigle and Chelednik.

## MEMORANDUM OPINION

STEPHEN A. STRIPP, Bankruptcy Judge.

This constitutes the court's decision on a motion by the Official Committee of Unsecured Creditors of the debtor, Investors and Lenders, for summary judgment avoiding the liens of eleven separate defendants. The eleven defendants have filed cross-motions for summary judgment. All eleven defendants made pre-petition loans to the debtor, secured by notes and mortgages held by the debtor and assigned to the defendants. All of the defendants recorded the assignments of mortgages pre-petition but none of the defendants took possession of the notes. The issues presented on these motions are whether the defendants' security interests in the notes were properly perfected and, if not, whether they are avoidable by the debtor-in-possession under 11 U.S.C. § 544(a). This court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b) and 157(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(K).

## FINDINGS OF FACT

On February 7, 1992, Investors and Lenders, Ltd., Investors and Lenders Realty Corp., Little Mortgage Co., and Jay P. Okun filed voluntary petitions under chapter 11, title 11, United States Code ("Bankruptcy Code" or "Code"). The United States trustee appointed an Official Committee of Unsecured Creditors ("Committee") for all of the debtors on February 12, 1992. The cases were consolidated on April 6, 1992.

The court approved the debtor's Third Amended Joint Disclosure Statement on March 8, 1993. The Joint Plan was confirmed by the court on June 15, 1993. The Joint Plan provides for a class of creditors ("Class 9") who hold collateral for their investments in Little Mortgage Co. Class 9 consists of:

1) Marvin and Eva Chanin holding an assignment of I & L's mortgage on 32 Buxmont Lane, Willingboro, NJ

2) Ronald D. and Marie P. Chelednik holding an assignment of I & L's mortgage on 6218 Vine Street, Philadelphia, PA

3) Robert and Ruth Cole holding an assignment of I & L's mortgage on 378 Armstrong Avenue, Jersey City, NJ

4) Lawrence J. Feit, M.D. PA Employee Pension Plan holding an assignment of I & L's mortgage on 1325 West 6th Street, Piscataway, NJ

5) Thornton S. Field, Sr. holding an assignment of I & L's mortgage on 2435 Huntington Drive, Upper St. Clair, PA

6) Carol Flomerfelt holding an assignment of I & L's mortgage on Lot 7, Block 253 on the Tax Map of Ocean Township, NJ

7) Mary Flynn holding an assignment of I & L's mortgage on Block 726, Lot 2, on the Tax Map of the Township of Westfield, NJ

8) Morris and Sydelle Glass holding an assignment of I & L's mortgage on 179 Redmond Street, New Brunswick, NJ

9) Joan Kenyon holding an assignment of I & L's mortgage on Lot 14, Block 45–

7 on the Tax Map of Manchester Township

10) Harold Schell holding an assignment of I & L's mortgage on 1307 Bangs Avenue, Asbury Park, NJ

11) George and Claire Sigle holding an assignment of I & L's mortgage on 626 Bayview Avenue, Union Beach, NJ

12) Helen Wass, custodian for Joseph Midura UGTMA holding an assignment of I & L's mortgage on 1126 Chestnut Street, Reading, PA

13) Nancy Yanosh holding an assignment of I & L's mortgage on 40 Oak Lane, Ewing, NJ

14) James and Frances Butler holding an assignment of I & L's mortgage on 226 Merchants Avenue, South Plainfield, NJ

From March 1988 through July 1990, the members of Class 9 made loans to Little Mortgage Co. at various times and for various amounts and received assignments of mortgages from Investors & Lenders, Ltd. as collateral. The assignments of mortgages also referenced the assignment of the underlying note, obligation, or bond. It is undisputed that each member of Class 9 recorded its assignment of mortgage. It is also undisputed that none of the members of Class 9 ever had possession of the notes underlying the assignments of the mortgages and that the debtor has retained continuous possession of the notes.

On May 10, 1993, the Committee, which has been authorized to bring this action on behalf of the debtor in possession, filed an omnibus complaint against the above members of Class 9 to determine the validity and extent of liens. Counts 1–13 of the complaint against each of the above class members, respectively, alleged that the defendants did not take possession of the note corresponding to the mortgage assignment, thereby failing to properly perfect their interest in the assigned note. The complaint requests a judgment that the defendants' security interests in the notes are avoided pursuant to Code

§ 544, and that the lien positions of the defendants are preserved for the benefit of the estate under Code § 551. On June 11, 1993, the Committee filed an amended complaint adding Count 14 containing the same allegations in the original complaint against the last defendant.

Three of the thirteen defendants, Chanin (count one), Cole (count three), and Kenyon (count nine) failed to answer and default was entered against them on September 27, 1993. The remaining eleven defendants are represented by four different attorneys and filed four separate answers and, therefore, will be grouped accordingly: Defendant Yanosh ("Yanosh"); Defendants Flynn, Flomerfelt, and Butler ("Flynn Defendants"); Defendants Feit, Field, Schell, Sigle, Glass and Chelednik ("Feit Defendants") and Defendant Wass ("Wass").

On October 22, 1993, the Committee moved for summary judgment on counts two, four, five, eight, ten, eleven and thirteen of the amended complaint to avoid liens of the Feit Defendants and Yanosh. On November 30, 1993, the Committee moved for summary judgment on counts six, seven and fourteen of the amended complaint avoiding the liens of the Flynn Defendants. All of these defendants subsequently filed cross-motions for summary judgment.[1] The Committee did not bring a motion for summary judgment against Wass.

## CONCLUSIONS OF LAW

Summary judgment is appropriate where the court concludes that "there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.PRO. 56(c). The parties do not raise any disputes as to the facts, but they do dispute the applicable law. The legal issues the court will address are whether the defendants' security interests were properly perfected and, if not, whether they are avoidable by the debtor-in-possession under 11 U.S.C. § 544(a).

---

1. Defendant Yanosh filed a cross-motion for summary judgment on count thirteen of the complaint on December 1, 1993. The Flynn Defendants filed a cross-motion for summary judgment on counts six, seven and fourteen of the amended complaint on December 13, 1993. Finally, the Feit Defendants filed a cross-motion for summary judgment on December 13, 1993.

■ Perfection of security interests is determined by state law. *In re Bristol Associates, Inc.*, 505 F.2d 1056, 1059 (3d Cir. 1974). Chapter 9 of the New Jersey Uniform Commercial Code ("NJUCC") N.J.S.A. § 12A:9–101 *et seq.*, provides the procedure for perfection of certain types of security interests. Under the NJUCC, a promissory note is an instrument. N.J.S.A. § 12A:9–105(1)(g) (Supp.1993); *In re Investors & Lenders, Ltd.*, 156 B.R. 145 (Bankr.D.N.J. 1993); *In re Kennedy Mortgage Co.*, 17 B.R. 957, 963 (Bankr.D.N.J.1982). An instrument is perfected only by possession with limited exceptions. N.J.S.A. § 12A:9–304(1) (Supp. 1993). Therefore, unless the NJUCC does not apply to the promissory notes at issue or the facts fit within an exception to the general rule that an instrument is perfected by possession, the defendants hold unperfected interests in the notes because they did not take possession.[2]

## A. Applicability of Uniform Commercial Code

■ In their cross-motions for summary judgment all the defendants argue that the notes were non-negotiable and, therefore, the NJUCC does not apply.[3] Furthermore, they maintain that the court's prior holding, that under the NJUCC perfection requires possession of the underlying note on an assignment of a mortgage, is distinguishable because the court did not address the negotiability of the notes. *See In re Investors & Lenders, Ltd.*, 156 B.R. 145 (Bankr.D.N.J. 1993). Assuming *arguendo* that the notes in questions are non-negotiable, the court will first address whether the NJUCC applies to non-negotiable notes and, if it does apply, how security interests in non-negotiable notes are perfected under the NJUCC. Chapter 9 of the NJUCC applies "[t]o any transaction (regardless of its form) which is intended to create a security interest in personal property or fixtures including goods, documents, instruments, general intangibles, chattel paper, or accounts." N.J.S.A. § 12A:9–102(1)(a) (Supp.1993). "The main purpose of this Section is to bring all consensual security interests in personal property and fixtures under this Article, except for certain types of transactions excluded by Section 9–104." UNIFORM COMMERCIAL CODE § 9–102 cmt. Purpose (1972). The transaction at issue involved a consensual security interest in the personal property of the debtor and does not fall within any of the excluded transactions in N.J.S.A. § 12A:9–104.[4]

---

**2.** The Flynn and Feit Defendants asserted as a defense that Okun held the notes in a fiduciary capacity for their benefit. The court rejects this argument following the well-settled principle that a debtor or those under his control cannot act as the possessory agent for the secured party for purposes of perfection. *In re Copeland*, 531 F.2d 1195, 1204 (3d Cir.1976); UNIFORM COMMERCIAL CODE § 9–305 cmt. 2 (1972) ("Possession [for purposes of perfection] may be by the secured party himself or by an agent on his behalf; it is of course clear, however, that the debtor or a person controlled by him cannot qualify as such an agent for the secured party.").

**3.** Defendant Yanosh later conceded in oral argument that the New Jersey Uniform Commercial Code governs the notes at issue whether or not they are negotiable but argued that these facts raise an exception to perfection by possession under N.J.S.A. § 12A:9–304, *see infra*.

**4.** None of the defendants argue that the parties did not intend to create a security interest in personal property, nor do they argue that the transactions are excluded under § 9–104. The Feit Defendants argue that the notes were related to real estate and, therefore, pursuant to § 9– 102(3) the NJUCC does not apply. Section 9– 102(3) provides that:

> The application of this Chapter to a security interest in a secured obligation is not affected by the fact that the obligation is itself secured by a transaction or interest to which this Chapter does not apply.

N.J.S.A. § 12A:9–102(3) (Supp.1993). In this case, the defendants took a security interest in the secured obligation namely the notes, and although the notes were secured by real property to which Chapter 9 does not apply, the defendants' security interest is in the notes themselves and, therefore, Chapter 9 applies. *See In re Bristol Associates, Inc.*, 505 F.2d 1056, 1064 n. 3 (3d Cir.1974). The often cited comment to § 9–102 describes the parties' transaction:

> The owner of Blackacre borrows $10,000 from his neighbor, and secures his note by a mortgage on Blackacre. This Article is not applicable to the creation of the real estate mortgage. However, when the mortgagee in turn pledges this note and mortgage to secure his own obligation to X, this Article is applicable to the security interest thus created in the note and the mortgage. Whether the transfer of the collateral for the note, i.e., the mortgagee's interest in Blackacre, requires further action

Therefore under N.J.S.A. § 12A:9–102, Chapter 9 of the NJUCC is applicable to the parties' transaction.

■ Having determined that Chapter 9 of the NJUCC applies to the notes, the notes must be categorized as either "goods, documents, instruments, general intangibles, chattel paper, or accounts." N.J.S.A. § 12A:9–102(1)(a) (Supp.1993). The defendants maintain that the notes are not within the definition of instruments because the notes are non-negotiable.[5] Chapter 9 of the NJUCC defines instrument as:

> "Instrument" means a negotiable instrument (defined in 12A:3–104), or a certified security (defined in 12A:8–102) *or any other writing which evidences a right to the payment of money and is not itself a security agreement or lease and is of a type which is in ordinary course of business transferred by delivery with any necessary indorsement or assignment.*

N.J.S.A. § 12A:9–105(1)(i) (Supp.1993) (emphasis added).[6] Thus, the issue as framed by the defendants is whether the latter part of the definition "any other writing which evidences a right to the payment of money ..." includes non-negotiable promissory notes. N.J.S.A. § 12A:9–105(1)(i) (Supp.1993). New Jersey courts have not determined whether "instrument" as defined in N.J.S.A. § 12A:9–

105(1)(i) includes non-negotiable notes. To resolve this issue the court will examine the NJUCC giving "effect insofar as possible to the language and intent of the legislators, giving each section a meaningful interpretation while not eclipsing any other portion of the statute." *In re Bristol Associates, Inc.,* 505 F.2d 1056 (3d Cir.1974).

■ The official comments to N.J.S.A. § 12A:9–308 of the NJUCC state that the definition of "instruments" in N.J.S.A. § 12A:9–105(1)(i) includes non-negotiable instruments. The 1961 New Jersey Study Comments to § 9–308 state that: "The rule of the first sentence of § 9–308 also applies to non-negotiable instruments. Such instruments are writing [sic] which evidence a right to payment of money and are not either security agreements or leases. See § 9–105(g)." N.J.S.A. § 12A:9–308 cmt. 1 (New Jersey Study Comments 1961) (West 1962) (Former § 9–105(g) is amended § 9–105(1)(i)). According to this comment, non-negotiable instruments can fall within the latter part of the definition of "instruments" in N.J.S.A. § 12A:9–105(1)(i).[7]

■ Moreover, the original 1961 enactment of N.J.S.A. § 12A:9–308 specifically referenced non-negotiable instruments:

**12A:9–308. Purchase of Chattel Paper and Non–Negotiable Instruments.**

---

> (such as recording an assignment of the mortgagees interest) is left to real estate law. See Section 9–104(j).
>
> UNIFORM COMMERCIAL CODE § 9–102 cmt. 4 (1972).

5. None of the parties argue that the notes in question are goods, documents, general intangibles, chattel paper, or accounts. Given the broad application of Chapter 9 to all transactions intending to create a security interest, including the type of transaction in this case, the defendants' argument that the notes in question do not fit into *any* of the types of property which can be subject to security interests (goods, documents, instruments, general intangibles, chattel paper, or accounts) defined in Chapter 9 is plainly without merit.

6. The Comments to this section provide:
> "Instrument": the term as defined in subsection (1)(g) includes not only negotiable instruments and investment securities but also any other intangibles evidenced by writings which are in the ordinary course of business transferred by delivery. As in the case of chattel paper "delivery" is only the minimum state

and may be accompanied by other steps. If the writing is itself a security agreement or lease with respect to specific goods it is not an instrument although it otherwise meets the term of the definition. See Comment below on "chattel paper".
> UNIFORM COMMERCIAL CODE § 9–105 cmt. 3 (1972).

7. Some non-negotiable writings do not meet all the elements of the latter part of the definition of "instruments" and are therefore grouped in the catch-all category of "general intangibles." *See Drabkin v. Capital Bank, N.A. (In re Latin Investment Corporation),* 156 B.R. 102, 105 (Bankr. D.D.C.1993). The parties did not address whether the notes could be construed as general intangibles because they did not meet the requirements of the latter part of the definition of "instruments." However, even if the notes are considered general intangibles rather than instruments, the defendants would still hold unperfected security interests because the NJUCC requires the filing of a financing statement to perfect a security interest in general intangibles. *See* N.J.S.A. § 12A:9–302 (West 1990).

A purchaser of chattel paper or a non-negotiable instrument who gives new value and takes possession of it in the ordinary course of his business and without knowledge that the specific paper or instrument is subject to a security interest has priority over a security interest which is perfected under 12A:9–304 (permissive filing and temporary perfection). A purchaser of chattel paper who gives new value and takes possession of it in the ordinary course of his business has priority over a security interest in chattel paper which is claimed merely as proceeds of inventory subject to a security interest (12A:9–306), even though he knew that the specific paper is subject to the security interest.

N.J.S.A. § 12A:9–308 (West 1962). N.J.S.A. § 12A:9–308 was amended in 1981 and the language completely rewritten. The amended version removes the term "non-negotiable instruments" and substitutes simply "instruments." "[The] purpose of the changes was to make the rules of this section applicable to negotiable instruments." UNIFORM COMMERCIAL CODE § 9–308 (Official Reasons for 1972 Changes 1972). The Uniform Commercial Code Comments to § 9–308 state:

It should be noted that under Section 9–304(1) *a security interest in an instrument, negotiable or non-negotiable,* cannot be perfected by filing (except where the instrument constitutes part of chattel paper.) Thus the only types of perfected non-possessory security interest that can arise in an instrument are the temporary 21 day perfection provided for in Section 9–304(4) and (5) or the 10 day perfection in proceeds of Section 9–306. Where such a perfected interest exists in a *non-negotiable instrument,* purchasers will take free if they qualify under clause (a) of the section.

UNIFORM COMMERCIAL CODE § 9–308 cmt. 4 (1972) (emphasis added).[8] Although the definition of "instrument" in N.J.S.A. § 12A:9–105(1)(i) does not explicitly include the term "non-negotiable," it is clear that "instruments" under N.J.S.A. § 12A:9–105(1)(i) includes non-negotiable instruments and, therefore, includes the notes in this case whether or not they are negotiable.[9] Moreover, the procedures for perfection of a security interest in an instrument under N.J.S.A.

---

**8.** *See also:*

The rule of the first sentence of the Section also applies to non-negotiable instruments. Note that the term "non-negotiable instrument" is by no means as broad as the common law concept of "chose in action": accounts, contract rights and general intangibles (all defined in Section 9–106) are not included. It also be noted that under Section 9–304(1) a security interest in an instrument, negotiable or non-negotiable, cannot be perfected by filing. Thus the only type of perfected non-possessory security interest that can arise in an instrument is the temporary 21 day perfection provided for in Section 9–304(4) and (5). Where such a perfected interest exists in a non-negotiable instrument, purchasers will take free if they qualify under the first sentence of the Section. Since the second sentence applies only to chattel paper, knowledge of the existing security interest would defeat the purchaser of a non-negotiable instrument even though that interest was claimed merely as proceeds.

*Uniform Commercial Code* § 9–308 cmt. 3 (1961). The rule of the first sentence of § 9–308 also applies to non-negotiable instruments. Such instruments are writing [sic] which evidence a right to payment of money and are not either security agreements or leases. See § 9–105(g). A security interest in an instrument (negotiable or non-negotiable) cannot be perfected by filing. Thus, the only perfected security interest which can be acquired in an instrument without the secured party having possession of that instrument is pursuant to § 9–304(4) and/or (5) providing for a temporary 21 day perfection. Where, a secured party has a perfected interest in a non-negotiable instrument pursuant to § 9–304(4) and/or (5), that perfected security interest may be defeated by a buyer who qualifies under the first sentence of § 9–308. N.J.S.A. § 12A:9–308 cmt. 1 (New Jersey Study Comments 1961) (West 1962).

**9.** Other courts interpreting UCC provisions have also held that "instruments" includes negotiable and non-negotiable notes. *See e.g. Army National Bank v. Equity Developers, Inc.,* 245 Kan. 3, 12, 774 P.2d 919, 926 (1989) (Kansas UCC); *Coral Petroleum, Inc. v. Paribas (In re Coral Petroleum, Inc.),* 50 B.R. 830, 838 (Bankr.S.D.Tex. 1985) (Court rejected argument that non-negotiable note was a "general intangible" under the UCC and concluded that non-negotiable note was an "instrument" because it was "transferable in the ordinary course of business."); *First National Bank v. Lone Star Insurance Co.,* 524 S.W.2d 525, 530 (Tex.Civ.App.1975) ("The fact that [the certificate of deposit] is non-negotiable simply means the third party cannot be a holder in due course and does not deny the certificate of deposit the status as an 'instrument.'").

§ 12A:9–304 apply to both negotiable and non-negotiable instruments.[10]

## B. Exceptions to Perfection by Possession

 Unless the notes at issue fall within an exception to perfection by possession under N.J.S.A. § 12A:9–304, the defendants' security interests were unperfected. The defendants do not argue that any of the explicit exceptions under N.J.S.A. § 12A:9–304 apply. Defendant Yanosh argues, however, that possession is not the only way to perfect a security interest in a note, and so long as the notice purpose of the statute is fulfilled the security interest can be deemed perfected. Specifically, defendant Yanosh argues that the note's reference to the mortgage was sufficient actual notice to potential purchasers of the defendant's security interest in the note, because a search for the mortgage in the recording office would have disclosed that it was assigned to the defendant. Defendant argues that because of such notice, possession of the note was not required to perfect her security interest in such note. Consequently, defendant Yanosh urges this court to carve out an exception to the general rule requiring possession for instruments, i.e. notes, which on their face provide information which will lead to notice of a security interest in such notes.

Although notice of security interests is one purpose of recording statutes and Chapter 9 of the NJUCC, such knowledge or notice will not always defeat a party who acquires a subsequent interest. For example, race recording statutes require a party to record first to perfect its mortgage in real property regardless of actual or constructive notice. In addition, the perfection procedures of the NJUCC which are applicable here clearly include a strict possession requirement after a temporary period of 21 days, regardless of actual or constructive notice. The NJUCC provides:

> A purchaser of chattel paper or an instrument who gives new value and takes possession of it in the ordinary course of his business has priority over a security interest in the chattel paper or instrument
>
> > (a) Which is perfected under 12A:9–304 (permissive filing and temporary perfection) or under 12A:9–306 (perfection as to proceeds) if he acts without knowledge that the specific paper or instrument is subject to a security interest. . . .

N.J.S.A. § 12A:9–308 (Supp.1993). The New Jersey Study Comments explain that:

> Knowledge of the existence of the security interest in a non-negotiable instrument will equally defeat a purchaser of the instrument under the rule of the first sentence of § 9–304. Thus, the party with a security interest in a non-negotiable instrument which is perfected without possession for the temporary period specified in § 9–304(4) and (5) may protect his temporary perfected interest by noting his interest on the instrument thereby preventing a purchaser from qualifying under the first sentence of § 9–308. *The period of protection cannot exceed the 21 day period specified in § 9–304(4) and (5) since security interests in instruments can be perfected for a longer period only by the secured party taking possession of the instrument.* Sections 9–304(6), 9–305.

N.J.S.A. § 12A:9–308 cmt. 2 (New Jersey Study Comments 1961) (West 1962) (empha-

---

**10.** The defendants argue that recordation of the assignment of mortgage perfected both the assignment of the mortgage and the security interest in the note even though the defendants did not take possession of the note. According to the defendants, the assignment of the mortgage transferred all interests both legal and equitable in the note and the mortgage and under N.J.S.A. § 2A:50–2 the defendants would be entitled to foreclose without possession of the note. Defendants have failed to recognize that the issue is not whether they paid value for the transfer of the note and mortgage; whether the parties intended to transfer both the note and the mort- gage; whether the note and mortgage can exist independently or are inextricably related; or whether the defendants would have a right to foreclose on their assignments of the mortgages without possession of the notes. On the contrary, the issue in an avoidance action under Code § 544 is simply whether the defendants properly perfected their interest in the notes so as to defeat the claim to the notes of a hypothetical lien creditor. Because the court finds that the NJUCC is applicable and provides the proper method of perfecting an interest in a note, the court need not address this argument further.

sis added). Under N.J.S.A. § 12A:9–308, even a security interest clearly indicated on a non-negotiable instrument will not defeat a purchaser who perfects by possession after the 21 day period provided for in § 9–304. The court declines the defendant's invitation to carve out a new exception to the NJUCC. The court finds that absent the applicability of one of the explicit exceptions in N.J.S.A. § 12A:9–304, a security interest in an instrument, i.e. a promissory note, can only be perfected by possession even if the note on its face indicated the existence of a security interest therein.

### C. Avoidance of the Security Interests Under Code § 544

■ Code § 544(a)(1) permits a trustee to avoid transfers of property or obligations of the debtor which would be voidable by a hypothetical creditor obtaining a judicial lien on all property of the debtor on the filing date. Under Code § 1107(a) the debtor in possession also has a trustee's avoidance powers under Code § 544(a)(1). The Committee has previously been authorized by this court to challenge liens on behalf of the estate. *See In re Investors & Lenders, Ltd.,* 156 B.R. 145 (Bankr.D.N.J.1993). Any avoided liens are preserved for the benefit of the estate under Code § 551. *Id.*

The defendants make various arguments that the Committee cannot avoid their security interests under Code § 544.[11] The Feit Defendants argue that even if the Uniform Commercial Code applies, the Committee is a holder and not a holder in due course and, therefore, subject to all claims and defense against the notes. The Feit Defendants maintain that their claims against the notes are superior to those of the Committee's which occupies the position of a mere holder. The Flynn Defendants make a similar argument that the holder in due course status cannot be obtained through judicial process or by judicial lien and, therefore, a hypothetical judicial lien creditor would not have an interest in the note superior to the defen-

dants. These arguments are without merit. The provisions of Chapter 3 of the NJUCC on commercial paper pertaining to holders and holders in due course are inapplicable to this motion. Rather, this motion is governed by the perfection provisions of Chapter 9 of the NJUCC. Under N.J.S.A. § 12A:9–301(1)(b) the rights of a lien creditor are superior to those with an unperfected security interest. A "lien creditor" includes "a trustee in bankruptcy from the date of the filing of the petition." N.J.S.A. § 12A:9–301(3) (Supp.1993). Therefore, the Committee's rights in the notes as a hypothetical judicial lien holder are superior to the unperfected security interest of the defendants in the notes and the Committee can avoid the defendants' liens under Code § 544.

### CONCLUSION

Under N.J.S.A. § 12A:9–105(1)(i) the notes at issue were "instruments" regardless of their negotiability, and a security interest therein must have been perfected by possession as required by N.J.S.A. § 12A:9–304(1). Because the defendants failed to take possession of the notes they have unperfected security interests. The Committee can properly avoid these unperfected security interests under Code § 544 and, therefore, the Committee is entitled to judgment as a matter of law. The Committee's motion for summary judgment is granted. The defendants' liens are avoided and will be preserved for the benefit of the estate under Code § 551. The defendants' cross motions for summary judgment are denied.

The attorney for the plaintiff will submit a form of judgment consistent with this opinion within ten days on notice under D.N.J.Bankr. Ct.R. 4(c).

---

11. Defendant Yanosh asserts as a defense that "[p]ossession of a note by the debtor where the mortgage has been recorded and refers to a note constitutes constructive notice to a trustee or unsecured creditors' committee preventing

avoidance under § 544(a)(3)." Answer at 5. This defense has no merit because the Committee is avoiding the lien under Code § 544(a)(1), not Code § 544(a)(3).