**In re CAMBRIDGE BIOTECH CORPORATION, Debtor.**

**Bankruptcy No. 94–43054–JFQ.**

United States Bankruptcy Court, D. Massachusetts.

March 1, 1995.

Kevin McGee, Seder & Chandler, Worcester, MA, for Official Unsecured Creditors' Committee.

Edward Bertozzi, Jr., Edwards & Angell, Providence, RI, for Fleet Credit Corp.

Joseph F. Ryan, Brown, Rudnick, Freed & Gesmer, Boston, MA, for Cambridge Biotech Corp.

## OPINION

JAMES F. QUEENAN, Jr., Bankruptcy Judge.

Fleet Credit Corporation (the "Creditor") moves for approval of its agreement with Cambridge Biotech Corporation (the "Debtor") granting it relief from the automatic stay with respect to bank accounts which the Debtor assigned to it as security for its loan obligation. The Official Unsecured Creditor's Committee (the "Committee") objects to the motion, asserting the Creditor has not perfected its security interest in the collateral. At issue is the proper method for perfecting a security interest in a bank account evidenced by a writing labeled "non-negotiable" and "non-transferable."

I conclude two of the accounts in question are properly classified as general intangibles. As the Creditor did not file a financing statement, it does not hold a perfected security interest in those accounts. This means the Committee can avoid the Creditor's security interest pursuant to the "strong arm" clause of section 544(a) of the Bankruptcy Code.[1] The creditor thus has no security interest deserving of adequate protection. I therefor deny approval of the agreement to the extent it provides the Creditor with relief from the automatic stay as to those two accounts.

Certain facts are not in dispute. The Debtor's obligation to the Creditor has a principal balance of about $1,007,000, and is evidenced by a promissory note and security agreement dated July 6, 1994. It is secured by bank accounts of the Debtor valued at about $1,026,000. The accounts are at eleven different financial institutions in Maryland, Pennsylvania, New Jersey, California, Texas and Illinois. In July of 1991, the Debtor executed and delivered to the Creditor an assignment of the accounts as security. This was done on the Creditor's form for each account except the Washington Savings Bank account, for which the bank's own "assignment of deposit" form was used. Each of the banks except Washington Savings Bank executed and delivered to the Creditor a "notice and acknowledgement of assignment" on the Creditor's form. Washington Savings Bank used its own "receipt and acknowledgement" form. The Debtor filed a petition under chapter 11 on July 7, 1994, and continues to operate as a debtor in possession.

In its memorandum of law, the Committee concedes the Creditor has a perfected security interest in nine of the eleven accounts. The Committee therefor limits its objection to two accounts, those located at Bank Hapoalim in Illinois, and Washington Savings Bank in Maryland. Each account matures in the sum of $99,000. The Committee argues the writings evidencing these two accounts are instruments, so that a security interest in them is perfected only by obtaining and retaining possession of the writings evidencing the accounts. The Creditor admits it does not know the whereabouts of the confirmation receipt for the Bank Hapoalim account or the certificate of deposit for the Washington Savings Bank account.

The Committee reserves its right to avoid certain of the other security interests as preferences. That issue is not before me now.

## I. CHOICE OF LAW

 The promissory notes and security agreements state they are to be governed by and construed in accordance with the laws of

---

1. This section provides in relevant part:
 (a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—
 (1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists.
 11 U.S.C. § 544 (1988).

 Pursuant to Bankruptcy Rule 7001, an adversary proceeding must be filed to avoid the Creditor's interest in the collateral.

Rhode Island.[2] Massachusetts courts have upheld such "choice of law" provisions so long as the law was "reasonably chosen" by the parties.[3] It was reasonable for the parties here to choose Rhode Island law to govern their agreement. The Creditor is located in Rhode Island and it negotiated the agreement in Rhode Island. The Debtor was to make payments to the Creditor in Rhode Island. Therefor, I will apply Rhode Island law.[4]

## II. CLASSIFYING THE COLLATERAL

The account at Bank Hapoalim in Illinois is evidenced by a writing issued by the bank which states: "We confirm that we have established a non-negotiable, non-transferable Time Deposit Account in your name...." The account at Washington Savings Bank in Maryland is evidenced by a writing labeled "Certificate of Deposit" which states: "This certifies that the Accountholder holds a savings account ... [t]his account is further defined by a Certificate of Deposit Disclosure Statement, the terms of which are hereby made a part of this certificate." The writing goes on to state the account is "non-negotiable" and "non-transferable except on the books of this savings bank."

### A. *Are these bank accounts excluded from Article 9's coverage?*

The Creditor asserts the accounts at issue are deposit accounts, which are excluded

from the scope of the Uniform Commercial Code.[5] Therefor, according to the Creditor, its interest in the accounts is governed by the common law of pledges.[6]

A deposit account is defined as:

(e) ... a demand, time, savings, passbook, or like account maintained with a bank, savings and loan association, credit union, or like organization, *other than an account evidenced by a certificate of deposit;* (emphasis added).[7]

Thus if the writing evidencing each account constitutes a certificate of deposit, the accounts are not deposit accounts.

■ Article 9 of the Uniform Commercial Code does not define the term "certificate of deposit." However, Article 3 does. Absent a contrary definition in Article 9, the definition contained in Article 3 controls.[8] Rhode Island has not adopted the 1990 revision to Article 3. Section 3–104(2)(c), as in effect in Rhode Island, defines a certificate of deposit as a "writing" which is "an acknowledgement by a bank of receipt of money with an engagement to repay it."[9] Section 3–104(3) provides: "As used in other chapters of this title and as the context may require, the term[ ] ... certificate of deposit ... may refer to instruments which are not negotiable

2. The copy of the note containing this provision submitted to the court does not contain a legible version of this provision.

3. *Morris v. Watsco, Inc.*, 385 Mass. 672, 433 N.E.2d 886 (Mass.1982); *see Maxwell Shapiro Woolen Co. v. Amerotron Corp.*, 339 Mass. 252, 158 N.E.2d 875 (Mass.1959); *Nissenberg v. Felleman*, 339 Mass. 717, 162 N.E.2d 304 (Mass. 1959); *see also* Mass.Ann.Laws ch. 106 § 1–105(1) (Law.Co-op.1984) (providing that when a transaction bears a reasonable relationship to this state and also to another state or nation the parties may agree that the law of either shall govern their rights and duties).

4. The Committee does not comment on any choice of law provision contained in the note between the Debtor and the Creditor. However it also asserts Rhode Island law should apply, as all acts required to perfect an interest in the collateral took place in Rhode Island. *See* Memorandum of law of Official Committee of Unse-

cured Creditors, dated September 30, 1994, at page 1.

5. R.I.Stat. tit. 6A, § 9–104 provides:

This chapter does not apply:

. . . . .

(m) To a transfer of an interest in any deposit account ... except as provided with respect to proceeds ... and priorities in proceeds.... R.I.Stat. tit. 6A, § 9–104(m) (1994).

6. It may well be that, were these accounts "deposit accounts", the Creditor would have a perfected security interest in them pursuant to the common law of pledges.

7. R.I.Stat. tit. 6A, § 9–105(e) (1994).

8. *See Drabkin v. Capital Bank, N.A. (In re Latin Inv. Corp.)*, 156 B.R. 102 (Bankr.D.C.1993).

9. R.I.Stat. tit. 6A, § 3–104(2)(c) (1994).

within this chapter as well as to instruments which are so negotiable."[10]

■ Both writings at issue fit Article 3's definition of a certificate of deposit. The writing from Bank Hapoalim acknowledges a deposit with a maturity amount of $99,000, names the Debtor as holder, and states a maturity date of five years hence, at which date the bank would renew the deposit or accept instructions to do otherwise. The writing from Washington Savings Bank is labeled a certificate of deposit, and includes in substance the same information: the Debtor is listed as the accountholder, the maturity date is years hence, at which time it can be renewed, and there is a penalty for withdrawal before maturity. Neither writing contains an explicit promise by the bank to repay. However, the words "promise to pay" are not essential. The law implies such a promise when the fact of deposit is established.[11] Each writing, moreover, contains a maturity date. This sets the date at which an obligation becomes due and payable.[12] The writings thus come within the scope of Article 3's definition of a certificate of deposit. That they are labeled non-negotiable and non-transferable does not affect their status as certificates of deposit because the definition expressly includes non-negotiable instruments. These restrictions, moreover, do not affect the banks' promise to repay.[13]

On the other hand, it can be argued that non-negotiable, non-transferable certificates of deposit *should* be considered a type of deposit account excluded from the scope of the Uniform Commercial Code. According to the official comment to section 9–104, transactions involving deposit accounts as collateral are excluded from Article 9's coverage because "[s]uch transactions are quite special, do not fit easily under a general commercial statute and are adequately covered by existing law."[14] Under this reasoning, it would perhaps make sense for local law to govern perfection of a security interest in a non-transferable, non-negotiable certificate of deposit, because the writing is arguably not part of the stream of commerce.[15] Indeed, under the 1990 revision to Article 3, a certificate of deposit is defined as a negotiable instrument, so that the writings here would be outside the scope of Article 9 if Rhode Island had adopted the 1990 revisions to Article. However, the version of section 3–104 in effect in Rhode Island (and Massachusetts) expressly states the writing need not be negotiable. Therefor, because these writings are certificates of deposit, the accounts at issue are not "deposit accounts" within the definition set forth in the Uniform Commercial Code, so they are governed by article 9 of this Code[16].

### B. *How should the accounts be classified under Article 9?*

■ The next issue is how these writings should be classified under article 9. The

**10.** R.I.Stat. tit. 6A, § 3–104(3) (1994).

**11.** 10 Am.Jur.2d: *Banks* § 455 (1963); *Pomeroy Nat'l Bank v. Huntington Nat'l Bank,* 72 W.Va. 534, 79 S.E. 662 (W.Va.1913).

**12.** Black's Law Dictionary 479 (6th ed. 1990).

**13.** *See Drabkin v. Capital Bank, N.A. (In re Latin Inv. Corp.),* 156 B.R. 102, 105 (Bankr.D.C.1993).

**14.** R.I.Stat. tit. 6A, § 9–104 (1994), comment 7.

**15.** According to one commentator:

A nontransferable CD should be considered a type of deposit account excluded from the scope of Article 9 by § 9–104(1). *In spite of the broad Article 3 definition,* it should not be considered a certificate of deposit for purposes of Article 9. Perfection should be based on common-law principles, and the issuing of the bank's own internal evidence of the CD should be sufficient. Filing or taking possession under Article 9 serves no commercial purpose, since no reasonable third party should rely on a property interest that is nontransferable.

Barkley Clark, The Law of Secured Transactions Under the Uniform Commercial Code ¶ 7.09[2] (2d ed. 1988) (emphasis added). *See also Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Van Kylen (In re Van Kylen),* 98 B.R. 455, 461 (Bankr. W.D.Wis.1989) (functional difference between deposit account and (typical) certificate of deposit is that certificate of deposit is item of collateral commonly used in commercial transactions and to which the UCC rules easily and specifically apply).

**16.** *See Latin Inv. Corp.,* 156 B.R. at 105. *But see Bank IV Topeka v. Topeka Bank & Trust Co.,* 15 Kan.App.2d 341, 807 P.2d 686 (Kan.Ct.App. 1991) (non-negotiable and non-transferable certificate of deposit is best described as deposit account); *Prudential–Bache Sec., Inc. v. Bartow County Bank,* 187 Ga.App. 530, 370 S.E.2d 751 (Ga.Ct.App.1988) (same).

Committee takes the position they are "instruments", so that perfection of a security interest can only be achieved through obtaining and retaining possession of them.[17] Because the Creditor does not know where the writings are, the Committee contends the Creditor cannot establish the requisite perfection, so that its security interest is avoidable.

An instrument is defined as:

(1)(i) ... a negotiable instrument ... or a certificated security ... or any other writing which evidences a right to the payment of money and is not itself a security agreement or lease *and is of a type which is in ordinary course of business transferred by delivery with any necessary indorsement or assignment;* (emphasis added).[18]

The certificates of deposit before me are labeled "non-negotiable." They are therefor not negotiable instruments. Nor are they a certificated security. Nor, because of their non-negotiability and the prohibition or restriction on their assignment, can they be considered "a type which is in the ordinary course of business transferred by delivery with any necessary endorsement or assignment." [19]

This latter point was recently addressed in *Drabkin v. Capital Bank, N.A. (In re Latin Investment Corp.).*[20] The bankruptcy court, using the Article 3 definition of certificate of deposit, concluded the writing was a certificate of deposit and not evidence of a deposit account excluded from Article 9's coverage.[21] However, the court refused to find as a matter of law that the certificate of deposit was not an instrument.[22] The court declined to use the legend "non-transferable" as reason to conclude the certificate of deposit was not "of a type which is in the ordinary course of business transferred by delivery with any necessary endorsement or assignment" within the meaning of section 9–105(1)(i).[23] Instead, it believed the realities of business practice should control whether a writing meets the standard for transferability.[24] It denied motions for summary judgment because it believed an issue of material fact existed as to whether, according to custom and usage in the market, a certificate of deposit bearing the legend "non-transferable" is generally recognized as being transferred by delivery in the ordinary course of business.[25]

I do not agree that the "realities of business practice" need be consulted. A clear and unambiguous legend on a writing should

---

**17.** R.I.Stat. tit. 6A, § 9–304(1) (1994) provides, with exceptions not relevant here: "A security interest in ... instruments ... can be perfected only by the secured party's taking possession." R.I.Stat. tit. 6A, § 9–305 (1994), in turn, provides: "A security interest is perfected by possession from the time possession is taken without relation back and continues only so long as possession is retained, unless otherwise specified in this chapter."

**18.** R.I.Stat. tit. 6A, § 9–105 (1994).

**19.** *See Bank IV Topeka,* 15 Kan.App.2d 341, 807 P.2d 686 (certificate of deposit labeled non-negotiable and non-transferable not instrument); *Prudential–Bache Sec.,* 187 Ga.App. 530, 370 S.E.2d 751 (same). *But see Latin Inv. Corp.,* 156 B.R. 102 (summary judgment denied because material question of fact existed as to whether non-negotiable and non-transferable certificate of deposit was in fact customarily transferred by delivery in the ordinary course of business); *Jamison v. Society Nat'l Bank,* 66 Ohio St.3d 201, 611 N.E.2d 307 (Ohio 1993) (non-negotiable and non-transferable certificate of deposit is instrument; lack of transferability not addressed); *General Elec. Co. v. M & C Mfg., Inc.,* 283 Ark. 110, 671 S.W.2d 189 (Ark.1984) (same); *cf. Panel Publish-*

*ers, Inc. v. Smith (In re Kelly Group, Inc.),* 159 B.R. 472, 480–81 (Bankr.W.D.Va.1993) (defining *"type"* broadly to consider any promissory note, even non-negotiable and non-assignable one, to be instrument perfected by possession, because lawyers and lenders are more likely to treat any promissory note as instrument and therefor not file financing statement).

**20.** 156 B.R. 102.

**21.** *Id.* at 105.

**22.** *Id.* at 109.

**23.** *Id.* at 106. *But see Bank IV Topeka v. Topeka Bank & Trust Co.,* 15 Kan.App.2d 341, 807 P.2d 686 (Kan.Ct.App.1991) (court determined professionals would not desire to trade in instrument marked non-transferable).

**24.** *Id.* at 106–07.

**25.** *Id.* at 109 (citing Grant Gilmore, Security Interests In Personal Property § 12.7 (1965) (decision on pledgeability of novel types of paper to turn on findings as to current usage of marketplace)).

end a court's inquiry as to how the writing should be classified. It is unfair to expect a lender to look beyond the face of the writing and determine what goes on in the marketplace. A lender should be able to rely on what a writing says. In this case, the writings tell the lender they cannot be negotiated, and that transferability is either prohibited or restricted. Therefor, they are obviously not the type of writing transferred in the ordinary course of business.

■ I hold the writings are "general intangibles."[26] Article 9 provides: " 'General intangibles' means any personal property (including things in action) other than goods, accounts, chattel paper, documents, instruments, and money."[27] The writings clearly do not fit any of the categories described as "goods". They are not accounts, as they do not evidence a right to payment for goods sold or services rendered.[28] They are not chattel paper, as they do not evidence a monetary obligation and a security interest in or a lease of goods.[29] They are not documents, as they are neither documents of title nor warehouse receipts.[30] As discussed above, they are not instruments because they are not transferable in the ordinary course of business. Finally, they are not money. However, they are personal property. And, as discussed above, they are not excluded from the scope of Article 9. Therefore, the writings must be included in Article 9's "catch-all" category of "general intangibles."

## III. PERFECTION

Perfection of a security interest is determined in accordance with state law.[31] A security interest in general intangibles is perfected by filing a financing statement in the office of the secretary of state.[32] Nowhere does the Creditor alleged it filed a financing statement. In its objection, the Committee asserts the creditor did not do so.[33] In the absence of a filing, the Creditor's security interest in the accounts is not perfected. Therefor, its interest can be avoided, making it ineligible for relief from stay.

The Creditor argues the law of the jurisdiction where the collateral is located governs perfection, not Rhode Island law. It cites Article 9's provision governing perfection of security interests in multiple state transactions. However, this provision requires that the law, including conflict of laws rules, of the jurisdiction in which the debtor is located governs the perfection and the effect of perfection or nonperfection of a security interest in general intangibles.[34] The Debtor's chief executive office being located in Worcester, Massachusetts, the Debtor is deemed located there.[35] Therefor, Massachusetts law governs. As previously explained, Massachusetts law recognizes the provision in the parties' note that the agreement be governed by Rhode Island law. And Rhode Island law requires that a financing statement be filed in the office of the secretary of state.

**26.** *See Franke v. Third Nat'l Bank & Trust Co.,* 31 Ohio App.3d 189, 190 n. 1, 509 N.E.2d 955, 957 n. 1 (Ohio Ct.App.1986) (concluding in dicta that certificate of deposit marked "non-negotiable" and "transferable only by assignment on the books of the Bank" should be classified as a general intangible); *cf. Castle Rock Indus. Bank. v. S.O.A.W. Enters., Inc. (In re S.O.A.W. Enters., Inc.),* 32 B.R. 279 (Bankr.W.D.Tex.1983) (holding non-assignable "Agreement for Deed" properly classified as general intangible rather than instrument); *Union Inv., Inc. v. Midland–Guardian Co.,* 30 Ohio App.3d 59 n. 1, 506 N.E.2d 271, 273 n. 1 (Ohio Ct.App.1986) (holding non-negotiable and non-transferable promissory note properly classified as general intangible).

**27.** R.I.Stat. tit. 6A, § 9–106 (1994).

**28.** *Id.*

**29.** R.I.Stat. tit. 6A, § 9–105(b) (1994).

**30.** R.I.Stat. tit. 6A, § 9–105(f) (1994).

**31.** *Official Committee of Unsecured Creditors of Investors & Lenders, Ltd. v. Field (In re Investors & Lenders, Ltd.),* 165 B.R. 389 (Bankr.D.N.J. 1994).

**32.** R.I.Stat. tit. 6A, §§ 9–302, 9–401 (1994).

**33.** *See* Objection by Official Unsecured Creditors' Committee to Motion by Fleet Credit Corporation for Approval of Agreement Granting Relief from Stay, dated August 19, 1994, at pages 2–3.

**34.** R.I.Stat. tit. 6A, § 9–103(3)(b) (1994).

**35.** R.I.Stat. tit. 6A, § 9–103(3)(d) (1994).

## IV. CONCLUSION

The Creditor does not hold a perfected security interest in the accounts at Bank Hapoalim and Washington Savings Bank, because it did not file a financing statement. Therefor, its interest in the accounts is avoidable. Its motion for approval of an agreement with the Debtor providing it with relief from stay is accordingly denied with respect to those two accounts because its avoidable security interest in them is not entitled to adequate protection.

An order accomplishing avoidance, however, can only be granted in the context of an adversary proceeding seeking avoidance, absent the Creditor's consent. A separate order has issued approving the agreement only in part.