**In re OMEGA ENVIRONMENTAL INC., a Delaware corporation, Debtor, Plaintiff–Appellant,**

v.

**VALLEY BANK NA, Defendant–Appellee.**

**No. 98–35731.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted March 9, 2000

Filed July 19, 2000

C. Keith Allred, Davis Wright Tremaine, Seattle, Washington, for the plaintiff-appellant.

Brian D. Lynch (argued) and Michael A. Padilla, Bishop, Lynch & White, Seattle, Washington, for the defendant-appellee.

Before: BROWNING, FLETCHER, and GOULD, Circuit Judges.

PER CURIAM:

Valley Bank issued an Irrevocable Standby Letter of Credit to Omega Environmental, Inc., in exchange for a promissory note payable to the Bank. The note was secured by a certificate of deposit ("CD"). The Bank received and honored a request for payment of the full amount of the Letter of Credit. The Bank later moved the bankruptcy court for an order terminating an automatic stay issued pursuant to 11 U.S.C. § 362 to permit it to enforce its right to payment of the CD against debtor Omega. Omega objected because the Bank failed to offer proof that

it had perfected its security interest in the CD.[1]

We agree with the bankruptcy court and the district court that the Bank perfected its security interest and was entitled to relief from the automatic stay.

## I.

A security interest in an "instrument" is perfected by possession. *See* Va. Code §§ 8.9–304(1) & 8.9–305.[2] It is undisputed that at all times relevant to this action the Bank had possession of the CD. Therefore, the Bank perfected its security interest in the CD if the CD is an "instrument" as defined in the Uniform Commercial Code (UCC) as adopted by Virginia:

> "Instrument" means a negotiable instrument as defined in § 8.3A–104, Title 8.8A or any other writing which evidences a right to the payment of money and is not itself a security agreement or lease and is of a type which is in ordinary course of business transferred by delivery with any necessary indorsement or assignment....

Va.Code § 8.9–105(1)(i).[3] It is undisputed that the CD is neither a "negotiable instrument" nor a security agreement nor a lease. *See id.* The only question is whether the CD is a writing evidencing a right to the payment of money "which is in ordinary course of business transferred by delivery with any necessary indorsement or assignment." *Id.*[4]

The bankruptcy court concluded that (1) although the CD is nonnegotiable, it is assignable by its terms and was in fact assigned to the Bank;[5] and (2) the CD " 'is of a type which is in ordinary course of business transferred by delivery with any necessary endorsement or assignment,' and as such qualifies as an instrument as defined by Va.Code Ann. § 8.9–105(1)." The bankruptcy court rested its decision in part upon *Panel Publishers, Inc. v. Smith (In re Kelly Group, Inc.),* 159 B.R. 472, 480–81 (Bankr.W.D.Va.1993), which held that promissory notes and certificates of deposit bearing the terms "nonnegotiable and nonassignable" are instruments under Va.Code § 8.9–105(1)(i). *Kelly* also rejected the argument that such documents should be characterized as "general intangibles," noting that "the Official Comment set forth in Va.Code § 8.9–106 makes clear that [the term 'general intangibles'] was intended to cover types of personal property such as goodwill, copyrights and trademarks that are not usually represented by a particular docu-

---

1. A creditor holding an unperfected security interest is not entitled to relief from an automatic stay imposed under Bankruptcy Code § 362. *See General Elec. Cap. Corp. v. Spring Grove Transport, Inc. (In re Spring Grove Transport, Inc.),* 202 B.R. 862, 867 (Bankr. E.D.Va.1996).

2. We apply the laws of the state of Virginia because the Deposit Account Assignment Agreement covering the CD provides that the laws of that state shall control.

3. UCC Article 9 (which governs secured transactions) defines "instrument" as "a negotiable instrument (defined in Section 3–104), or a certificated security (defined in Section 8–102) or any other writing which evidences a right to the payment of money and is not itself a security agreement or lease and is of a type which is in ordinary course of business transferred by delivery with any nec-

essary indorsement or assignment." U.C.C. § 9–105(1)(i) (1999).

4. Although whether the CD is properly characterized as an "instrument" is a question of law reviewed de novo, whether the CD is "of a type which is in ordinary course of business transferred by delivery with any necessary indorsement or assignment" is a question of fact reviewed under the "clearly erroneous" standard. *See Duckor, Spradling & Metzger v. Baum Trust (In re P.R.T.C., Inc.),* 177 F.3d 774, 782 (9th Cir.1999); *Drabkin v. Capital Bank, N.A. (In re Latin Investment Corp.),* 156 B.R. 102, 109–110 (Bankr.D.C.1993).

5. The CD states on its face: "This certificate (and the account it represents) may not be transferred or assigned without [the Bank's] prior written consent and is not negotiable." The CD was assigned to the Bank through a Deposit Account Assignment Agreement.

ment." *Id.* at 478–79.[6]

Kelly's holding that "nonnegotiable, nontransferable" certificates of deposit are "instruments" under Va.Code § 8.9–105(1)(i) has not yet been accepted or rejected by Virginia courts. *See Kelly,* 159 B.R. at 477–78. However, the weight of authority supports the conclusion that a nonnegotiable certificate of deposit, even if bearing words limiting its transferability as in this case, is an "instrument" as defined under UCC Article 9. *See, e.g., In re Latin Investment Corp.,* 156 B.R. at 109 (holding that certificates of deposit are instruments, not general intangibles, even if the certificate is labeled "nontransferable"); *Kroh Operating Ltd. Partnership v. Barnett Bank of Southwest Florida (In re Kroh Brothers),* 101 B.R. 114, 119–120 (Bankr.W.D.Mo.1989) (holding that nonnegotiable certificates of deposit are instruments within the meaning of UCC Article 9, even if transferability is severely restricted); *Cadle Co. v. Citizens Nat. Bank,* 200 W.Va. 515, 490 S.E.2d 334, 338–39 (W.Va.1997) (holding that certificates of deposit are instruments and noting that the majority of jurisdictions agree).

■ Almost every court to face the issue has rejected the argument that the language on the certificate is controlling, *i.e.,* if a certificate of deposit bears the legend "nontransferable" it cannot be "in ordinary course of business transferred" as required by the UCC definition of an instrument. UCC Article 9 provides a uniform method of perfection for security interests in all types of property. Rather than "narrowly looking to the form of the writing, a court should instead look to the realities of the marketplace." *Craft Products, Inc. v. Hartford Fire Ins. Co.,* 670 N.E.2d 959, 961 (Ind.Ct.App.1996).[7] If there is evidence that the type of writing at issue is ordinarily transferred in the marketplace by delivery with the necessary endorsement, the requirements of Article 9 are met. *See In re Latin Investment Corp.,* 156 B.R. at 106–109; *Coral Petroleum, Inc. v. Paribas (In re Coral Petroleum, Inc.),* 50 B.R. 830, 837–38 (Bankr.S.D.Tex.1985) (holding that test of transferability rests on determination of what business people would do); *see also* Hawkland, Lord & Lewis, 8 *Hawkland Uniform Commercial Code Series* § 9–105:10, p. 281 ("The test for whether an instrument is within subsection 9–105(1)(i)'s coverage is whether the item has gained recognition as one which is ordinarily transferred by delivery with a necessary indorsement or assignment.").

The bankruptcy court's finding that the CD in this case is a type of document which is in the ordinary course of business in Virginia treated as transferable by delivery with any necessary endorsement or assignment is not clearly erroneous. The court relied upon a declaration by the president of the Bank, the fact that the CD was actually transferred, and upon the statements in *Kelly,* to conclude that ordinary commercial practice in Virginia is to treat "nontransferable" certificates of deposit as "instruments." Omega did not claim there was a question of fact as to ordinary commercial practice in Virginia at the time the bankruptcy court entered its

---

**6.** "General intangibles" are a catch-all category, defined, in relevant part, as "any personal property (including things in action) other than goods, accounts, chattel paper, documents, [and] instruments...." Va.Code § 8.9–106. Security interests in "general intangibles" are perfected by filing a financing statement. *See* Va.Code § 8.9–302(1). The Bank did not file a financing statement in connection with its security interest in the CD.

**7.** *See also In re Latin Investment Corp.,* 156 B.R. at 106 ("There is no basis in UCC § 9–105(1)(i) for allowing the legend on a writing to control its transferability. Instead, that section requires that actual business practices be consulted."); *In re Kelly Group,* 159 B.R. at 481 ("The test for whether an instrument is within subsection 8.9–105(1)(i)'s coverage is whether the item is of a type which is ordinarily transferred by delivery with a necessary indorsement or assignment.... It is common commercial practice to transfer promissory notes by delivery.") (citation omitted).

order. The majority of the case law concerning the characterization of certificates of deposit also supports the bankruptcy court's conclusion.[8]

## II.

Since the CD is an instrument as defined in Va.Code § 8.9–105(1)(i), the Bank perfected its security interest by possession and the bankruptcy court properly granted the Bank relief from the automatic stay.

AFFIRMED.

8. Omega cites three cases holding that certificates of deposit labeled as "nontransferable" are not "instruments" under UCC Article 9. *In re Cambridge Biotech Corp.*, 178 B.R. 34, 38–39 (Bankr.D.Mass.1995), held that a certificate of deposit which states on its face "nonnegotiable and nontransferable" is a general intangible under Rhode Island law. Acknowledging that its holding was against the weight of authority, the court held that "[nonnegotiable, nontransferable certificates of deposit] are not instruments because they are not transferable in the ordinary course of business." *Id.* at 39. However, the court made no factual finding as to whether in commercial practice such certificates are in fact transferred, but merely stated, "I do not agree that the 'realities of business practice' need be consulted." *Id.* at 38; *see also Bank IV Topeka, N.A. v. Topeka Bank & Trust Co.*, 15 Kan.App.2d 341, 807 P.2d 686, 691 (Kan.Ct.App.1991) (holding that a certificate of deposit labeled "nontransfera-

ble" is not an instrument without making any inquiry into actual business practice); *Prudential–Bache Securities, Inc. v. Bartow County Bank*, 187 Ga.App. 530, 370 S.E.2d 751, 752–753 (Ga.Ct.App.1988) (same). Ignoring actual commercial practice in interpreting the UCC is contrary to its general policy of effectuating existing business practices. *See* U.C.C. § 1–102(2)(b) & cmt. 1 ("This Act is drawn to provide flexibility so that … it will provide its own machinery for expansion of commercial practices."); *see also In re Latin Investment Corp.*, 156 B.R. at 106 ("[I]f the business world regularly transfers writings bearing the legend 'nontransferable,' the court should give that practice legal effect.… The UCC is not intended to thwart usual business practices but to effectuate them."). The majority rule that certificates of deposit are instruments as defined in Article 9 furthers the public policy concerns of the UCC.