(807 P.2d 686)

No. 65,509

BANK IV TOPEKA, N.A., EXECUTOR OF THE ESTATE OF FLORENE E. LAUVER, *Appellant*, v. TOPEKA BANK & TRUST COMPANY, *Appellee*, and CAPITOL FEDERAL SAVINGS & LOAN ASSOCIATION, *Defendant*.

Opinion filed March 15, 1991.

*Eric W. Severson*, of Irwin, Clutter & Severson, of Topeka, for the appellant.

*Stuart Messer*, of Glenn, Cornish, Hanson & Karns, of Topeka, for the appellee.

Before LEWIS, P.J., ELLIOTT and RULON, JJ.

LEWIS, J.: Bank IV Topeka, N.A., in its capacity as executor of the estate of Florene E. Lauver, deceased, (hereinafter referred to as the executor) instituted this action to recover the proceeds of a certificate of deposit (CD) issued in the name of the deceased. The defendant, Topeka Bank & Trust Company, (Bank) claimed a lien on the CD. Appellee, Capitol Federal Savings & Loan Association, (Capitol Federal) was the institution which issued the CD and is merely awaiting directions to whom to pay the pro-

ceeds of the CD. Capitol Federal did not participate in this appeal. The trial court granted the Bank's motion for summary judgment, holding that it had a proper security interest in the CD. After careful review, we affirm, but for different reasons than the trial court.

A note of explanation is appropriate. Throughout this opinion, we will refer to the document in question as a CD. We do so primarily for purposes of convenience and do not use the term "CD" as it is employed and defined in the Uniform Commercial Code (UCC).

The decedent, Florene E. Lauver, was the owner of a CD in the amount of $100,000. This CD was issued by Capitol Federal and was payable to Mrs. Florene E. Lauver. On the face of the CD, under section II, General Section, it is stated: "This certifies that the Account Holder holds a savings account with the Opening Balance and for the initial term expiring on the Initial Maturity Date shown hereon in Capitol Federal Savings and Loan Association, Topeka, Kansas. *This certificate is nontransferable.*" (Emphasis added.)

On July 3, 1984, the decedent executed a "hypothecation agreement" in favor of the Bank. The hypothecation agreement authorized Richard Cummins to pledge the CD as security for any indebtedness he owed to the Bank. The hypothecation agreement is not complicated and reads as follows:

"HYPOTHECATION AGREEMENT

"The undersigned hereby authorizes Richard Cummins (herein called debtor) to hypothecate, pledge and/or deliver the securities described below and issued Florene E. Lauver and _____ and the undersigned agrees that when so hypothecated, pledged and/or delivered said securities shall be collateral to secure any present or future indebtedness, obligation or liability howsoever evidenced, owing by debtor to Topeka Bank and Trust, Topeka, Kansas, or any extension or renewal thereof, hereby consenting to the extension or renewal from time to time of any such indebtedness, obligation or liability, and waiving any notice of any such indebtedness, obligation, liability, extension or renewal.

"Description of Securities

"Capitol Federal Savings & Loan Association Certificate of Deposit No. 812815 in the amount of $100,000.00 dated 2-10-84 to mature 2-9-87 in the name of Florene E. Lauver.

| 7/3/84 | BY: /s/ Florene E. Lauver |
|--------|---------------------------|
| Date | |

/s/ K. E. Fox

witness 7-3-84"

The facts show that Cummins pledged the CD as security for a note he executed in favor of the Bank on the same day the hypothecation agreement was signed and delivered to the Bank. The CD itself was delivered to, and is retained by, the Bank. The Bank sent a letter to Capitol Federal, advising it of its claimed security interest in the CD. In that letter, the Bank advised Capitol Federal as follows:

"Mrs. Florene E. Lauver has pledged the above described Certificate of Deposit as collateral for a loan with this bank. We will appreciate your marking your records of this fact and this assignment is to be effective until released in writing by an officer of this bank. The amount pledged is $100,000.00. We are holding the Certificate."

At the top of the letter the number of the CD is listed. Capitol Federal signed a receipt in writing acknowledging receipt of the Bank's letter.

Mrs. Lauver died December 30, 1988. Richard Cummins died July 4, 1989. At the time of his death, the promissory note secured by the CD in question was in default. The executor filed this action, seeking to void any lien on the CD claimed by the Bank and to recover the CD as an asset of the estate.

The trial court held that the CD was an "instrument" under the UCC and that the Bank had perfected its security interest in the CD by taking possession of it. Accordingly, summary judgment was granted to the Bank.

We believe that the trial court reached the correct result but for the wrong reason. Our appellate courts have said, on numerous occasions, that "where the trial court reaches the correct result based upon the wrong reason, this court will affirm the trial court." *State v. Shehan*, 242 Kan. 127, 131, 744 P.2d 824 (1987). See *Collins v. Heavener Properties, Inc.*, 245 Kan. 623, 633, 783 P.2d 883 (1989); *Sutter Bros. Constr. Co. v. City of Leavenworth*, 238 Kan. 85, 93, 708 P.2d 190 (1985); *Vap v. Diamond Oil Producers, Inc.*, 9 Kan. App. 2d 58, Syl. ¶ 6, 671 P.2d 1126 (1983). Indeed, it has been held that "[t]he reasons given by the district court for its decision are immaterial so long

as its ruling was correct for any reason." *Prairie State Bank v. Hoefgen,* 245 Kan. 236, 245, 777 P.2d 811 (1989).

Pursuant to those authorities, we affirm the trial court. We agree with the trial court's conclusion that the Bank had a valid lien on the CD. We do not agree with the conclusion that the CD was an "instrument" under the UCC.

It is, perhaps, important to note what is *not* involved in our decision. Although most of the opinions on this particular question seem to turn on whether a lien is properly "perfected," that is not an issue in this case. This case does not involve claims of innocent third parties, competing creditors, or holders in due course. This case involves a dispute between the executor of the estate of the individual who pledged the CD and the Bank who relied on that pledge and extended credit. In essence, this is an action between the original parties to the transaction. In that sense, this case is similar to *Kansas State Bank v. Overseas Motosport, Inc.,* 222 Kan. 26, 563 P.2d 414 (1977). That case dealt with the validity of a lien between a bank and the party which granted the lien. In pointing out that a valid security interest, though not perfected, was still enforceable between the original parties, the court said:

"We should emphasize that we are concerned here with the rights of only the *original parties* to a secured transaction—Hunter and the bank. So far as the record discloses, Hunter remained the owner of the vehicle. He did not sell it; he did not transfer the title; he did not mortgage, pledge, or otherwise encumber the vehicle to third parties; nor did he cause the cycle to become subject to the lien of a repairman.

"The bank acquired its security interest—its lien on the vehicle—pursuant to the terms of its security agreement and the provisions of the Uniform Commercial Code. A security interest is created by a security agreement, and attaches as provided by sec. 9-204. *Priority* is established and protected by recording the lien on the title; but we are not here concerned with priorities or the rights of third parties. No third party is claiming an interest superior to that of the bank." 222 Kan. at 30.

In the case at bar, we are equally not concerned with priority. Therefore, although the issue is discussed, perfection of a security interest is simply not an issue crucial to our decision.

The trial court concluded that the CD in question was an "instrument" under the UCC and that the Bank had a valid security interest in the CD through possession.

Before turning to the resolution of that question, we first note a procedural argument made by the Bank. It appears that, in the district court, the executor argued that the CD was a negotiable instrument that needed to be endorsed and delivered to the secured party in order to transfer an interest. On appeal, however, the executor argues that the CD in question is not a negotiable instrument. The Bank argues that the executor has raised a new issue on appeal and that this should not be permitted.

In *State v. Anderson*, 12 Kan. App. 2d 342, Syl. ¶ 1, 744 P.2d 143 (1987), we held:

"Issues not presented to the trial court will not be considered for the first time on appeal. However, if a newly asserted issue involves only a legal question arising on proved or admitted facts which will be finally determinative of the case, or if consideration is necessary to serve the ends of justice or to prevent a denial of fundamental rights, an appellate court may consider the issue even though not considered by the trial court."

We conclude that we will permit the executor's argument on this appeal. That argument does raise a new issue. However, since the facts of this case have been agreed upon and the question of whether the CD is an instrument under Article 9 of the UCC is a question of law, we feel that the argument should be allowed.

Our scope of review in this particular instance is unlimited; see *Hutchinson Nat'l Bank & Tr. Co. v. Brown*, 12 Kan. App. 2d 673, 674, 753 P.2d 1299, *rev. denied* 243 Kan. 778 (1988) ("This court's review of conclusions of law is unlimited.").

We now turn to the question of whether the CD was an instrument under the UCC. K.S.A. 1990 Supp. 84-9-105(1)(i) defines the term "instrument" as follows:

" 'Instrument' means a negotiable instrument (defined in K.S.A. 84-3-104 and amendments thereto), or a certificated security (defined in K.S.A. 84-8-102 and amendments thereto) or any other writing which evidences a right to the payment of money and is not itself a security agreement or lease and is of a type which is in ordinary course of business transferred by delivery with any necessary indorsement or assignment."

First, it is clear that, whatever the instrument is, it is not a negotiable instrument. K.S.A. 84-3-104(1) states:

"Any writing to be a negotiable instrument within this article must
"(a) be signed by the maker or drawer; and

"(b) contain an unconditional promise or order to pay a sum certain in money and no other promise, order, obligation or power given by the maker or drawer except as authorized by this article; and

"(c) be payable on demand or at a definite time; and

"(d) be payable to order or to bearer."

We have examined the instrument in question and conclude that it is clearly not payable to order or to bearer. Therefore, it is not a negotiable instrument within the meaning of the UCC.

The next question is whether the instrument can be defined as a "certificated security." The term "certificated security" is defined in K.S.A. 1990 Supp. 84-8-102(1)(a) as follows:

"A 'certificated security' is a share, participation or other interest in property of or an enterprise of the issuer or an obligation of the issuer which is (i) represented by an instrument issued in bearer or registered form; (ii) of a type commonly dealt in on securities exchanges or markets or commonly recognized in any area in which it is issued or dealt in as a medium for investment; and (iii) either one of a class or series or by its terms divisible into a class or series of shares, participations, interests or obligations."

Neither party to this litigation argues that the CD is a "certificated security." Our research reveals that the Oklahoma Supreme Court, in *Victory Nat. Bk., Nowata v. Oklahoma St. Bk., Vinita*, 520 P.2d 675 (Okla. 1973), held that a certificate of deposit involved in that case was an "investment security" within the meaning of the UCC. We decline to adopt that decision.

In our opinion, the fact that this instrument is marked on its face as "nontransferable" prevents it from becoming a certificated security. It is impossible for this court to conclude that a "nontransferable" CD is of a type "commonly dealt in on securities exchanges or markets or commonly recognized in any area in which it is issued or dealt in as a medium for investment." We cannot imagine that persons involved in the securities exchanges or dealing in investments would consider that a CD marked on its face to be "nontransferable" could be used as a medium for investment.

The UCC goes on to define certain documents, which we will refer to as "any other writings," as being instruments under the UCC under the proper circumstances. Such a document must be a writing which: (1) evidences the right to the payment of money; (2) is not of itself a security agreement or lease; (3) is of a type

which is in the ordinary course of business transferred by delivery with any necessary endorsement or assignment.

It is apparent that the CD in question is not a security agreement or lease. That means it can be an instrument under the UCC if it meets the requirements for "any other writings."

There are some decisions on the question at hand. In *Prudential-Bache Securities, Inc. v. Bartow County Bank*, 187 Ga. App. 530, 530-31, 370 S.E.2d 751, *cert. denied* 187 Ga. App. 908 (1988), the Georgia court had before it issues nearly identical to those in the instant matter. The Georgia court held that the document in question was not an instrument and stated:

"The appellant contends that the written documents pursuant to which the defendant-in-garnishment had assigned the certificate of deposit to the bank as collateral for the corporate indebtedness did not give the bank a perfected security interest in the certificate pursuant to Article 9 of the Uniform Commercial Code. We agree. The certificate specified on its face that it was 'non-transferable,' with the result that it can be considered neither a 'negotiable document' nor an 'instrument' within the contemplation of the UCC, . . . Moreover, it has previously been observed by this court that 'the secured transactions article of the Uniform Commercial Code does not apply to transfers of bank deposits or savings accounts.' [Citation omitted.] However, it does not follow that the assignment documents were ineffective to give the bank a superior claim to the deposits represented by the certificate, for it has been held that an agreement which purports to transfer a security interest in bank deposits but is ineffective to do so may nevertheless be effective to create a contractual lien on such deposits. [Citation omitted.] We have been offered no reason why the defendant-in-garnishment's clear intention to create such a lien in favor of the bank should not be honored."

The Arkansas Supreme Court reached a totally contrary decision in the case of *General Electric Co. v. M & C Mfg., Inc.*, 283 Ark. 110, 112, 671 S.W.2d 189 (1984). In that case, the question was whether a security interest in a CD perfected by possession was superior to a judgment against the owner of a CD. The facts indicate that the CD before the Arkansas court was nonnegotiable and nontransferable. The court held that the CD was, in fact, an "instrument" under the UCC.

We are not persuaded by the reasoning of the Arkansas court in the *General Electric* case. That court simply stated that the fact that the certificates were nonnegotiable and nontransferable

does not prevent them from being instruments. The court does not explain the rationale behind that conclusion.

The question of whether a certificate of deposit worded in the manner of the one in the case at bar is an instrument is a matter of first impression in Kansas. In *Army Nat'l Bank v. Equity Developers, Inc.*, 245 Kan. 3, 774 P.2d 919 (1989), the Kansas Supreme Court dealt with the question of whether a "note" was an instrument under the Code. Our Supreme Court, in Syl. ¶ 3, stated:

"K.S.A. 1988 Supp. 84-9-105(1)(i) defines an instrument under the Uniform Commercial Code. The definition of 'instrument' in the UCC is broad and intentionally incorporates standard banking practice. The fact that a note is nonnegotiable and of *limited transferability* does not prevent it from being an instrument that can be pledged as collateral and for which possession is the only proper method of perfection."

The court went on to hold that the notes before it were, indeed, "instruments" under the UCC. The important distinction is that, in *Army Nat'l Bank*, the notes were of "limited transferability." In the instant matter, the certificates are "nontransferable."

In *Army Nat'l Bank*, our Supreme Court seemingly adopted the views of Barkley Clark. See Clark, The Law of Secured Transactions Under the Uniform Commercial Code ¶ 7.03 (2d ed. 1988). In ¶ 7.03 of his work, Clark discusses the rationale of *In re Coral Petroleum, Inc.*, 50 Bankr. 830 (Bankr. S. D. Tex. 1985). In that case, the court held that notes of limited transferability were instruments under the UCC. The emphasis of that decision, with which Clark agrees, appears to make the question one dependent upon the "current usage of the marketplace." *In re Coral Petroleum, Inc.*, 50 Bankr. at 838. The decision seems to turn on whether professionals who deal with the writing attach importance to its possession. We have no indication in this record that would aid us in concluding what professionals in the marketplace might make of the document before us. However, it is our opinion that, given careful thought, most professionals would not desire to trade in an instrument that is marked "nontransferable."

Although there are cases holding both ways, we are convinced that the CD in question is not an "instrument" under the UCC. In this regard, we follow *Prudential-Bache*, 187 Ga. App. 530,

and the rationale of Clark, ¶ 7.09[2], who has this to say about the nontransferable CD:

"Given the uncertainty of the UCC in this area, what is the best rule for the courts to follow? A nontransferable CD should be considered a type of deposit account excluded from the scope of Article 9 by § 9-104(1). In spite of the broad Article 3 definition, it should not be considered a certificate of deposit for purposes of Article 9. Perfection should be based on common-law principles, and the issuing bank's own internal evidence of the CD should be sufficient. Filing or taking possession under Article 9 serves no commercial purpose, since no reasonable third party should rely on a property interest that is nontransferable. Upon the borrower's default, the issuing bank should be able to enforce its common-law security interest by the simple exercise of set-off, as with uncertificated bank accounts. . . . Possession of a nontransferable CD should not be necessary."

We adopt the rationales of Clark and of the *Prudential-Bache* decision. We conclude that this document is best classified as a type of deposit account under K.S.A. 1990 Supp. 84-9-105(e). As a result of this conclusion, Article 9 of the UCC does not apply. K.S.A. 84-9-104(1) specifically excludes a lien on a "deposit account" from its provisions.

Despite our conclusion that the document in question is not an Article 9 "instrument," we still hold that the Bank has a valid lien on the proceeds in Mrs. Lauver's account. We adopt the conclusion of the *Prudential-Bache* decision that the lien is a "contractual lien" and it is valid as against the executor of Mrs. Lauver's estate.

We have found no Kansas cases which specifically deal with a contractual lien. Despite that fact, we see no reason why a contractual lien is not a perfectly valid concept in this state.

The general theory of a contractual lien is set forth in 53 C.J.S., Liens § 4(c):

"In order that a lien may be created by a contract, express or implied, it is generally necessary that the language of the contract or the attendant circumstances should clearly indicate an intention of the parties to create a lien on the specific property, and should show a specific charge on, or appropriation of, that property.

"A mere promise to pay a debt or obligation does not create a lien; and, unless an intention to create a lien is clearly apparent from the language of the instrument, a mere promise or undertaking to pay out of a particular fund when received, the promisor retaining control of the fund, creates no lien on the fund. Also, a void contract cannot give rise to a valid lien.

"Subject to the foregoing requirements, no particular form is required for an agreement to effect a lien; an agreement is sufficient for this purpose if it clearly indicates the intention to create a lien, the debt to secure which it is given, and the property on which it is to take effect."

In *Citizens Bank v. Elks Bldg., N.V.*, 663 P.2d 56, 59 (Utah 1983), the Utah court held that "a contractually created lien must (1) identify the property to be charged, and (2) make clear that the lien is to secure payment of the debt in question."

We hold that the hypothecation agreement signed by Mrs. Lauver was sufficient to prove that the Bank held a contractual lien on the account represented by the CD. The hypothecation agreement clearly indicates that it is to secure an indebtedness from Mr. Cummins to the Bank and the specific security is described. We are given no indication that Mrs. Lauver was incompetent, misled, or under an improper influence in signing the hypothecation agreement. We think that her intent is indicated by the hypothecation agreement, in which she has clearly granted a contractual lien to the Bank on the proceeds of her bank account at Capitol Federal. The lien that she created is certainly valid and prior to any interest her executor may have acquired in the proceeds of the bank account.

The executor argues that it is significant that the decedent did not endorse the document or otherwise transfer it to the Bank. We do not agree. The document in this case was "nontransferable," and it was never intended that it be negotiated or transferred by indorsement or otherwise. Mrs. Lauver was free, however, to create a valid lien on her bank account, and we conclude that she did.

As stated above, we affirm the trial court's decision, but not its reasoning in reaching that decision. The decision of the trial court was correct and it must be affirmed.

Affirmed.