CRAFT PRODUCTS, INC.
Appellant–Defendant,

and

Alonzo Craft, Jr., Secured
Party–Defendant,

v.

HARTFORD FIRE INSURANCE
COMPANY, Appellee–
Plaintiff.

No. 20A03–9511–CV–367.

Court of Appeals of Indiana.

Oct. 4, 1996.

Christopher E. Baker, Rubin & Levin, Indianapolis, for Appellee–Plaintiff.

## OPINION

STATON, Judge.

Alonzo Craft, Jr. ("Craft") appeals the trial court's order finding that the garnishment lien acquired by Hartford Fire Insurance Co. ("Hartford") had priority over his prior, unperfected security interest in a certificate of deposit. Craft presents several issues for our review which we consolidate and restate as follows: Whether the trial court erred in determining that the certificate of deposit was an instrument under IND.CODE § 26–1–9–105(1)(i) (1993).

We affirm.

Craft was the President and sole shareholder of Craft Products, Inc. In 1993, he loaned the company $1,285,000 for which the company signed a security agreement. The security agreement was filed with the Indiana Secretary of State and the Elkhart County Recorder in June 1994. The company ceased operations. Later Craft foreclosed on the loan in July 1994.

In November 1994, Hartford obtained a judgment against the company and then filed a proceedings supplemental and attempted to garnish a Certificate of Deposit ("CD") held by Valley American Bank for the company.

Craft alleges that he had a prior, perfected security interest in the CD, as evidenced by the security agreement; thus, he should have priority with regard to its proceeds. The trial court disagreed and determined that because the CD was classified as an "instrument" under IND.CODE § 26–1–9–105(1)(i) (1993) [1] the only method for perfection would be by possession. Because Craft did not have possession of the CD prior to Hartford's garnishment lien, he did not have a perfected security interest.

Craft argues that the trial court erroneously concluded that the CD was an instrument. Although the classification of a CD under Article 9 is an issue of first impression

William J. Cohen, Elkhart, for Secured Party–Defendant.

---

1. IND.CODE § 26–1–9–101 to –507 (1993) is Indiana's version of Article 9 of the Uniform Commercial Code. For purposes of clarity we will refer to it generally as "Article 9."

in Indiana, other jurisdictions provide guidance. An instrument:

> ... means a negotiable instrument (defined in IC 26–1–3.1–104), or a certificated security (defined in IC 26–1–8–102), or any other writing which evidences a right to the payment of money and is not itself a security agreement or lease and is of a type which is in ordinary course of business transferred by delivery with any necessary endorsement or assignment.

IC 26–1–9–105(1)(i). The parties do not dispute the trial court's determination that the CD was not a negotiable instrument. Therefore the only issue before us is whether the CD is "any other writing ... which is in ordinary course of business transferred by delivery." *Id.*

The parties disagree concerning whether the CD can be transferred in the ordinary course of business.[2] Craft argues that this instrument cannot be transferred because it bears the legend "non-transferrable."[3] He argues that this language is controlling. However, most courts disagree with his argument. The overall purpose of Article 9 is to provide a method of perfection of security interests in all types of property. *First Nat'l Bank in Grand Prairie v. Lone Star Life Ins. Co.*, 524 S.W.2d 525, 530 (Tex. Civ.App.1975). Instead of narrowly looking to the form of the writing, a court should instead look to the realities of the marketplace. *In re Latin Investment Corp.*, 156 B.R. 102, 109 (Bankr.D.C.1993). If the evidence shows that the type of writing at issue is customarily transferred in the marketplace by delivery of possession, then the requirements of Article 9 are met. *Id.* See also, *In re Kelly Group, Inc.*, 159 B.R. 472 (Bankr.

W.D.Va.1993) (common business practice to transfer non-negotiable, non-transferrable promissory notes); *In re Coral Petroleum, Inc.*, 50 B.R. 830 (Bankr.S.D.Tex.1985) (test of transferability rests on determination of what businessmen would do); *Citizens National Bank of Orlando v. Bornstein*, 374 So.2d 6 (Fla.1979) (restrictions on transfer do not remove certificate of deposit from coverage under Article 9).[4]

Here, although the CD was labeled as non-negotiable and non-transferrable, it clearly was transferrable in the ordinary course of business. Prior to Hartford's garnishment of the CD, the CD was in the possession of Amwest Surety Insurance ("Amwest") as collateral for a bond. In pledging the CD as collateral, Craft transferred possession of the CD to Amwest and executed an assignment; thus perfecting Amwest's interest in the CD. When Amwest released its interest in the CD, it returned the CD and assignment to the bank. The company's prior transfer and assignment of the CD supports the conclusion that, in the marketplace, an interest in the CD is transferred by relinquishing possession of the CD. Relying on the current usage of the marketplace in determining whether a writing is transferrable in the ordinary course of business, we conclude that the CD at issue is an instrument. *Latin Investments, supra.*

Because the CD is classified as an instrument, Craft could only perfect his security interest by obtaining possession. IND.CODE § 26–1–9–304(1). Here, Craft did not have possession of the CD, and therefore, failed to perfect his security interest. Hartford, as a lien creditor, takes priority over Craft's un-

---

**2.** The parties do not appear to dispute that the CD, in which the bank agrees to pay Craft $10,-000 plus accrued interest at maturity, is a writing evidencing the right to a payment of money.

**3.** Craft also argues that since the Company had ceased doing business when the CD was returned by Amwest, it could no longer transfer the CD in the ordinary course of business. However, Craft cites no authority for his novel definition of "ordinary course of business," nor do we find any.

**4.** Craft cites two cases which hold that a CD is not an instrument under Article 9, neither of which we find persuasive. *Bank IV Topeka v.*

*Topeka Bank & Trust Co.*, 15 Kan.App.2d 341, 807 P.2d 686 (1991); *Prudential–Bache Sec., Inc. v. Bartow County Bank*, 187 Ga.App. 530, 370 S.E.2d 751 (1988). *Bank IV Topeka* simply assumes that no reasonable person would accept transfer of a CD labeled "nontransferable." *Bank IV Topeka, supra*, 807 P.2d at 691. *Prudential–Bache*, merely takes the wording of the CD at face value and notes that the Uniform Commercial Code does not apply to bank deposits or savings accounts. *Prudential–Bache, supra*, 370 S.E.2d at 752. Neither case provides any rationale to support the decision nor looks to the realities of the marketplace.

perfected security interest. IND.CODE § 26–1–9–301 (1993).

Accordingly, we conclude that the trial court did not err in determining that Hartford's garnishment lien had priority.

Affirmed.

GARRARD and KIRSCH, JJ., concur.