IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2014 Term

FILED

March 7, 2014

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

No. 13-0379

WAYNE KIRBY and JOYCE KIRBY,
Plaintiffs Below, Petitioners

v.

LION ENTERPRISES, INC. and T/A BASTIAN HOMES,
Defendants Below, Respondents

Appeal from the Circuit Court of Marion County
The Honorable David R. Janes, Judge
Civil Action No. 12-C-47

AFFIRMED, IN PART;
REVERSED, IN PART, AND REMANDED

Submitted:  January 28, 2014
Filed:  March 7, 2014

Gregory T. Hinton, Esq.
Fairmont, West Virginia
Attorney for the Petitioners

Lee R. Demosky, Esq.
Meyer, Darragh, Buckler,
Bebenek & Eck, P.L.L.C.
Greensburg, Pennsylvania
Attorney for the Respondents

JUSTICE WORKMAN delivered the Opinion of the Court.
JUSTICE KETCHUM concurs and reserves the right to file a concurring opinion.

SYLLABUS BY THE COURT

1. "Appellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo*." Syl. Pt. 2, *State ex rel. McGraw v. Scott Runyon Pontiac-Buick, Inc.*, 194 W. Va. 770, 461 S.E.2d 516 (1995).

2. "When a trial court is required to rule upon a motion to compel arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1–307 (2006), the authority of the trial court is limited to determining the threshold issues of (1) whether a valid arbitration agreement exists between the parties; and (2) whether the claims averred by the plaintiff fall within the substantive scope of that arbitration agreement." Syl. Pt. 2, *State ex rel. TD Ameritrade, Inc. v. Kaufman*, 225 W. Va. 250, 692 S.E.2d 293 (2010).

3. "The formation of a contract with multiple clauses only requires consideration for the entire contract, and not for each individual clause. So long as the overall contract is supported by sufficient consideration, there is no requirement of consideration for each promise within the contract, or of 'mutuality of obligation,' in order for a contract to be formed." Syl. Pt. 6, *Dan Ryan Builders, Inc. v. Nelson*, 230 W. Va. 281, 737 S.E.2d 550 (2012).

i

4.     The law enunciated in syllabus point six of *Dan Ryan Builders, Inc. v. Nelson*, 230 W. Va. 281, 737 S.E.2d 550 (2012), that "the formation of a contract with multiple clauses only requires consideration for the entire contract, and not for each individual clause" modified the law set forth in *Board of Education v. W. Harley Miller, Inc.*, 160 W. Va. 473, 236 S.E.2d 439 (1977), to the extent that an arbitration clause in a contract need not be specifically "bargained for."

5.     "The doctrine of unconscionability means that, because of an overall and gross imbalance, one-sidedness or lop-sidedness in a contract, a court may be justified in refusing to enforce the contract as written.  The concept of unconscionability must be applied in a flexible manner, taking into consideration all of the facts and circumstances of a particular case."  Syl. Pt. 12, *Brown ex rel. Brown v. Genesis Healthcare Corp.*, 228 W. Va. 646, 724 S.E.2d 250 (2011), *overruled in part on other grounds sub nom. Marmet Health Care Ctr., Inc. v. Brown*, 132 S. Ct. 1201 (2012).

6.     "'An analysis of whether a contract term is unconscionable necessarily involves an inquiry into the circumstances surrounding the execution of the contract and the fairness of the contract as a whole.'  Syllabus Point 3, *Troy Mining Corp. v. Itmann Coal Co.*, 176 W. Va. 599, 346 S.E.2d 749 (1986)."  Syl. Pt. 13, *Brown ex rel. Brown v. Genesis*

ii

*Healthcare Corp.*, 228 W. Va. 646, 724 S.E.2d 250 (2011), *overruled in part on other grounds sub nom. Marmet Health Care Ctr., Inc. v. Brown*, 132 S. Ct. 1201 (2012).

Workman, Justice:

This case is before the Court upon the appeal of the Petitioners, Wayne Kirby and Joyce Kirby, from the March 15, 2013, order entered by the Circuit Court of Marion County, West Virginia, granting a motion to dismiss and compelling arbitration in favor of the Respondents Lion Enterprises, Inc., and T/A/ Bastian Homes (referred to collectively as "Bastian Homes"). The Petitioners argue that the circuit court erred in concluding that: 1) the arbitration provision was "bargained for"; 2) the arbitration provision was "fairly negotiated"; and 3) the Petitioners' claims are within the terms of the arbitration provision. Based upon a review of the parties' briefs and oral arguments, the appendix record, and all other matters submitted before the Court, we affirm the decision of the circuit court, in part, and reverse, in part, and remand for further development on the issue of unconscionability.

## I. Facts and Procedural History

On March 16, 2009, the Petitioners entered into a written agreement with Bastian Homes for the construction of a new home in Fairmont, West Virginia. The agreement contained an arbitration clause, which required that

> [t]he parties hereby agree and acknowledge that in the event any disagreement or dispute shall arise pertaining to the terms of this Agreement, all matters and controversies shall be submitted to a board of arbitrators, which shall consist of three (3) members one of whom shall be chosen by the Contractor, one of whom

1

shall be chosen by the Owner and the third shall be chosen by the two designees.[1]

---

[1]The full arbitration clause set forth in paragraph 19 of the agreement provided:

19.      ARBITRATION: The parties hereby agree and acknowledge that in the event any disagreement or dispute shall arise pertaining to the terms of this Agreement, all matters and controversies shall be submitted to a board of arbitrators, which shall consist of three (3) members one of whom shall be chosen by the Contractor, one of whom shall be chosen by the Owner and the third shall be chosen by the two designees.  Each of the board of arbitrators shall be a qualified residential contractor (or a substantially similar classification of arbitrator as maintained by the American Arbitrator Association) having an office and/or conducting a primary amount of its work within a reasonable radius of the Bastian Homes office in which this Agreement originated. The aforesaid arbitration shall be conducted in accordance with the rules of the American Arbitration Association and shall be held in the Bastian Homes office in which that Agreement originated or such other mutually acceptable office.  The determination of the board of arbitrators shall be final and binding upon the parties hereto and not subject to appeal, in the absence of fraud, and the prevailing party may enforce the determination by application for entry of judgment in any court of competent jurisdiction or by other procedures established by law. The cost of the board of arbitrators and the attorney's fees of the prevailing party shall be paid by the losing party. Notwithstanding anything contained herein to the contrary, the responsible party agrees to pay to the other party or any required third party any amounts which are not in dispute. Any amounts which are in dispute and subject to arbitration shall be paid by the responsible party into an interest bearing escrow account mutually established by the parties at a bank or other financial institution and the funds shall be released to the parties in accordance with the board of arbitrator's determination.

Bastian Homes, in turn, subcontracted with Ed Dwire, doing business as Dwire Plumbing ("Dwire Plumbing"), to provide the plumbing service necessary for the home being constructed. Before the new home was fully constructed, there was a water leak that allegedly substantially damaged major portions of the partially-constructed home.

On February 3, 2012, the Petitioners filed a complaint against Bastian Homes and Dwire Plumbing, alleging that when their home was under construction it sustained substantial damage and there was a ten-month delay in completion of the home caused completely by the joint negligence of Bastian Homes and Dwire Plumbing.

Bastian Homes moved to dismiss the complaint on the basis that the arbitration clause in the construction contract required the parties to submit the matter to arbitration. Bastian Homes relied upon this Court's decision in *Board of Education v. W. Harley Miller, Inc.*, 160 W. Va. 473, 236 S.E.2d 439 (1977) (*"Harley Miller II"*)[2] in support of its motion.[3]

---

[2]As a backdrop to *Harley Miller II*, in *Board of Education v. W. Harley Miller, Inc.*, 159 W. Va. 120, 221 S.E.2d 882 (1975) *("Harley Miller I")*, this Court made great strides in advancing the law of arbitration by determining that a contractual obligation to submit a dispute to arbitration creates a condition precedent to a right of action upon the contract. *Id*. The *Harley Miller I* decision removed from the jurisprudence of this state the notion under common law that "a party could revoke its promise to submit to arbitration at any time before [an] award." *Id*. at 122, 221 S.E.2d at 883.

[3]In *Harley Miller II*, the case was again before the Court upon a certified question. The question posed was "whether the circuit court has jurisdiction to enforce an arbitration award upon a motion for summary judgment by the party prevailing at arbitration." 160 W.

(continued...)

3

Bastian Homes argued that under *Harley Miller II*, "the contract between the parties was *bargained for* and each party has provided consideration for the contract. Specifically, the Kirbys agreed to pay Bastian for its work in constructing the dwelling under the contract and Bastian agreed to perform according to the contract." (Emphasis added); *see* 160 W. Va. at 473-74, 236 S.E.2d at 440-41; *see also supra* note 3.

---

[3](...continued)
Va. at 474, 236 S.E.2d at 441. The Court answered the question in the affirmative. *Id*. at 473, 236 S.E.2d at 440, Syl. Pt. 2 ("Where, in the absence of fraud, an arbitration award has been made by arbitrators pursuant to a bargained-for arbitration provision, the award is enforceable by a motion for summary judgment upon a complaint setting forth the contract, the arbitration provision, and the award of the arbitrators."). The Court also held in syllabus point one and three of *Harley Miller II* that:

> Where parties to a contract agree to arbitrate either all disputes, or particular limited disputes arising under the contract, and where the parties bargained for the arbitration provision, such provision is binding, and specifically enforceable, and all causes of action arising under the contract which by the contract terms are made arbitrable are merged, in the absence of fraud, into the award of the arbitrators.

> It is presumed that an arbitration provision in a written contract was bargained for and that arbitration was intended to be the exclusive means of resolving disputes arising under the contract; however, where a party alleges that the arbitration provision was unconscionable, or was thrust upon him because he was unwary and taken advantage of, or that the contract was one of adhesion, the question of whether an arbitration provision was bargained for and valid is a matter of law for the court to determine by reference to the entire contract, the nature of the contracting parties, and the nature of the undertakings covered by the contract.

*Id*. at 473-74, 236 S.E.2d at 440-41, Syl. Pts. 1 and 3.

4

The Petitioners filed a memorandum in opposition to the motion to dismiss. The Petitioners argued, based upon *Harley Miller II*, that the arbitration clause at issue was not "bargained for" and was therefore invalid. In support of their position, the Petitioner Wayne Kirby stated in an affidavit that he was presented with the contract containing the arbitration clause, that he "raised objection" to the arbitration clause with William Burkett of Bastian Homes and that he was "told not to worry about it because they were bonded." Further, he stated that "it was pointed out to me that Bastion [sic] Homes would correct or repair any defects in workmanship if discovered by either of us and submitted to Bastion [sic] Homes within a year of possession of said home . . . ."[4]

The parties agreed to the circuit court deciding the motion to dismiss without any hearing. In an order entered March 15, 2013, the circuit court, relying upon *Harley*

---

[4]The Petitioners also argued that their claims do not fall within the provisions of the construction agreement. We summarily reject the Petitioners' argument on this issue. The Petitioners maintain that they have a right to sue Ed Dwire, doing business as Ed Dwire Plumbing "for negligence irrespective of the construction agreement between the petitioners and the respondent." That is not the issue that was before the court below or now on appeal to this Court. The issue is whether the arbitration clause, which provides that "[t]he parties hereby agree and acknowledge that in the event any disagreement or dispute shall arise pertaining to the terms of this Agreement, all matters and controversies shall be submitted to a board of arbitrators, . . ." governs the claims pursued against Bastian Homes by the Petitioners. The Petitioners have alleged that Bastian Homes is jointly liable for the alleged negligence of the plumbing subcontractor that was hired by Bastian Homes as a result of the construction contract between the Petitioner and Bastian Homes. It is clear that the Petitioners' claims against Bastian Homes constitute a "dispute . . . pertaining to the terms of" the construction contract.

5

*Miller II*, determined that the Petitioner's claims were subject to arbitration. The circuit court found that "[a]fter reviewing the entire contract, the nature of the contracting parties and the parties' bargaining positions, . . . the arbitration provision was fairly negotiated and is not unconscionable, having not been presented with evidence sufficient for overcoming the general presumption that all arbitration provisions are bargained for." This appealed followed.

## II. Standard of Review

"Appellate review of a circuit court's order granting a motion to dismiss a complaint is *de novo*." Syl. Pt. 2, *State ex rel. McGraw v. Scott Runyon Pontiac-Buick, Inc.*, 194 W. Va. 770, 461 S.E.2d 516 (1995). Further,

> [w]hen a trial court is required to rule upon a motion to compel arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1–307 (2006), the authority of the trial court is limited to determining the threshold issues of (1) whether a valid arbitration agreement exists between the parties; and (2) whether the claims averred by the plaintiff fall within the substantive scope of that arbitration agreement.

Syl. Pt. 2, *State ex rel. TD Ameritrade, Inc. v. Kaufman*, 225 W. Va. 250, 692 S.E.2d 293 (2010).

Applying the foregoing standard of review, we consider the parties' arguments.

III.  Discussion

**A.  Improper Application of Harley Miller II**

We first address the issue of whether the circuit court correctly found that

the arbitration provision was "bargained for" under the law established in *Harley Miller*

*II.  See* 160 W. Va. at 473-74, 236 S.E.2d 440-41, Syl. Pts. 1 and 3.  The Petitioners

argued that there was no valid arbitration agreement between the parties because the

arbitration agreement was not "bargained for."  In resolving the issue, we acknowledge

that in *Harley Miller II,* the Court held in 1977 that an arbitration provision contained

within a contract must be "bargained for." *See id.; see also supra* note 3 (setting forth full

text of syllabus point). The Court also established a presumption that when "an arbitration

provision in a written contract was bargained for . . . that arbitration was intended to be

the exclusive means of resolving disputes arising under the contract[.]" *Id.*, Syl. Pt. 3; *see*

*supra* note 3 (setting forth full text of syllabus point).


*Harley Miller I* and *Harley Miller II* were important decisions insofar as

they greatly advanced the law of arbitration in this State in the 1970s.[5]  Both  decisions,

---

[5]*See Brown ex rel. Brown v. Genesis Healthcare Corp.*, 228 W. Va. 646, 670-71 nn. 52 & 57, 724 S.E.2d 250, 274-75 nn. 52 & 57 (2011), *overruled in part on other grounds sub nom. Marmet Health Care Ctr, Inc. v. Brown*, 132 S. Ct. 1201 (2012) (referring to *Harley Miller II* as setting forth "[t]he West Virginia common-law corollary to Section 2 [of the FAA]" and recognizing that prior to *Harley Miller II*, the Court routinely held in our cases that "'[a]t common law an agreement to submit to arbitration was revocable at any time (continued...)

7

however, were rendered without the benefit of and guidance set forth in United States

Supreme Court opinions[6] that followed the *Harley Miller* cases and addressed the

applicability of the Federal Arbitration Act ("FAA"), 9 United States Code Annotated §§

1 to 16 (West 2009), to arbitration agreements. Subsequent to those more recent United

States Supreme Court decisions, we discussed the applicability of the FAA to arbitration

agreements in this State in *State ex rel. Richmond American Homes of West Virginia, Inc.

v. Sanders*, 228 W. Va. 125, 717 S.E.2d 909 (2011), as follows:

> We begin by discussing the applicable law relating to
> the FAA. In *Brown v. Genesis Healthcare Corp* ., [228 W.
> Va. 646, 727 S.E.2d 250 (2011), *overruled in part on other
> grounds sub nom. Marmet Health Care Center, Inc. v. Brown*,
> 132 S. Ct. 1201 (2012)], we noted that the "primary

---

[5](...continued)
before [an] award. . . . A contract to submit future differences to arbitration is not binding.'").

[6]*See Allied-Bruce Terminix Cos., Inc. v. Dobson*, 513 U.S. 265, 281 (1995) ("In any event, § 2 gives States a method for protecting consumers against unfair pressure to agree to a contract with an unwanted arbitration provision. States may regulate contracts, including arbitration clauses, under general contract law principles and they may invalidate an arbitration clause 'upon such grounds as exist at law or in equity for the revocation of *any* contract.' 9 U.S.C. § 2 (emphasis added). What States may not do is decide that a contract is fair enough to enforce all its basic terms (price, service, credit), but not fair enough to enforce its arbitration clause. The Act makes any such state policy unlawful, for that kind of policy would place arbitration clauses on an unequal 'footing,' directly contrary to the Act's language and Congress' intent. *See Volt Information Sciences, Inc.*, 489 U.S. [468], at 474, 109 S.Ct. [1248], at 1253 [(1989)]."); *Southland Corp. v. Keating*, 465 U.S. 1 (1984) (deciding that Congress would not have wanted state and federal courts to reach different outcomes about the validity of arbitration in similar cases and concluding that the FAA preempts state law).

substantive provision" of the FAA is Section 2.[7]  We interpreted Section 2 as saying that "a written provision to settle by arbitration a controversy arising out of a contract that evidences a transaction affecting interstate commerce is valid, irrevocable, and enforceable, unless the provision is found to be invalid, revocable or unenforceable upon a ground that exists at law or in equity for the revocation of any contract." In other words, Section 2 contains two parts: "the first part holds that written arbitration agreements affecting interstate commerce are 'valid, irrevocable, and enforceable,' but the second part is a 'savings clause' that allows courts to invalidate those arbitration agreements using general contract principles."

The purpose of the FAA is to impel "courts to treat arbitration agreements like any other contract.  The Act does not favor or elevate arbitration agreements to a level of importance above all other contracts; it simply ensures that private agreements to arbitrate are enforced according to their terms."

*Richmond Am. Homes*, 228 W. Va. at 133, 717 S.E.2d at 917 (footnote added and footnotes omitted).

Since recognizing the interplay of the FAA with arbitration agreements in this State, the Court was presented in *Dan Ryan Builders, Inc. v. Nelson*, 230 W. Va. 281, 737 S.E.2d 550 (2012), with a certified question from the United States Court of Appeals

---

[7]*See* 9 U.S.C.A. § 2 ("A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.").

for the Fourth Circuit, which resolves the issue currently before the Court. In *Dan Ryan*, the Fourth Circuit posed the following question: "Does West Virginia law require that an arbitration provision which appears as a single clause in a multi-clause contract, itself be supported by mutual consideration when the contract as a whole is supported by adequate consideration?" *Id*. at 283, 737 S.E.2d at 552.

In answering this question, this Court first recognized that "[t]he elements of a contract are an offer and an acceptance supported by consideration." *Id*. at 287, 737 S.E.2d at 556 (citing *First Nat'l Bank of Gallipolis v. Marietta Mfg. Co.*, 151 W. Va. 636, 153 S.E.2d 172 (1967); *see New v. Gamestop, Inc.*, ___ W. Va. ___, ___, 753 S.E.2d 62, 71 2013) ("West Virginia contract law requires mutual assent to form a valid contract. . . . "'In order for this mutuality to exist, it is necessary that there be a proposal or offer on the part of one party and an acceptance on the part of the other. Both the offer and acceptance may be by word, act or conduct that evince the intention of the parties to contract. That their minds have met may be shown by direct evidence of an actual agreement. . . .'") (citations and footnote omitted.)"). We then acknowledged that, just as in the instant case wherein the Petitioner argues that the arbitration clause was not "bargained for,"

> parties to contracts frequently challenge the enforceability of
> arbitration clauses--clauses which do not impose parallel
> duties to arbitrate on both parties--on the ground that the
> clauses lack consideration or lack equivalent promises (that is,

10

lack mutuality of obligation). However, the majority of courts conclude that the parties need not have separate consideration for the arbitration clause, or equivalent, reciprocal duties to arbitrate, so long as the underlying contract as a whole is supported by valuable consideration.

230 W. Va. at 288, 737 S.E.2d at 557. The Court held in syllabus point six of *Dan Ryan* that

[t]he formation of a contract with multiple clauses only requires consideration for the entire contract, and not for each individual clause. So long as the overall contract is supported by sufficient consideration, there is no requirement of consideration for each promise within the contract, or of "mutuality of obligation," in order for a contract to be formed.

*Id*. at 283, 737 S.E.2d at 552.

Pursuant to our holding in *Dan Ryan*, when challenging the enforceability because the arbitration clause was not supported by consideration, was not bargained for, or was not negotiated for, the focus is not upon the consideration or bargain for the singular arbitration clause. Instead, "[s]o long as the overall contract is supported by sufficient consideration, there is no requirement of consideration for each promise within the contract, or of 'mutuality of obligation,' in order for a contract to be formed." *Id*.

Since the *Harley Miller II* decision, the law of arbitration in this State as set forth in *Harley Miller II* has been largely preempted by the FAA as this Court has fully explained in our more recent arbitration cases. *See, e.g., Dan Ryan,* 230 W. Va. at 282,

11

737 S.E.2d at 552, *Richmond Am. Homes*, 228 W. Va. at 133, 717 S.E.2d at 917.  An

additional change that has occurred because of the preemption by the FAA, which we

recognized in *Dan Ryan,* is the lack of a legal requirement that the arbitration clause be

specifically "bargained for."  230 W. Va. at 282, 737 S.E.2d at 552, Syl. Pt. 6.


          Notwithstanding these clear changes in the law, the parties and the circuit

court continued to rely upon the principles enunciated in *Harley Miller II,*[8] which was in

error.  To prevent this continued adherence to the principles set forth in *Harley Miller II*

from occurring again in future cases, we hold that the law enunciated in syllabus point six

of *Dan Ryan Builders, Inc. v. Nelson*, 230 W. Va. 281, 737 S.E.2d 550 (2012), that "the

formation of a contract with multiple clauses only requires consideration for the entire

contract, and not for each individual clause" modified the law set forth in *Board of

Education v. W. Harley Miller, Inc.*, 160 W. Va. 473, 236 S.E.2d 439 (1977), to the extent

that an arbitration clause in a contract need not be specifically "bargained for."


          Consequently, while the circuit court determined that the arbitration clause

at issue had been "bargained for," the determination was of no moment.  Applying the

law enunciated in *Dan Ryan,* so long as the construction contract in its entirety is well

supported by an offer, acceptance and sufficient consideration, there is no requirement

---

[8]*See Harley Miller II*, 160 W. Va. at 473, 236 S.E.2d at 440, Syl. Pt. 1 & 3.

12

that the arbitration clause be independently "bargained for" in order for a contract to be formed.  *See* 230 W. Va. at 282, 737 S.E.2d at 552, Syl. Pt. 6.  In other words, the Petitioner could not have defeated the arbitration clause based upon the argument that the clause was not bargained for.  Having reviewed the contract at issue, there is no question that the entire contract is derived from an offer, acceptance and sufficient consideration.  Every page of the agreement was either signed by or initialed by the Petitioners, including specific handwritten details for the home set forth in "Construction Agreement Detail," all of which demonstrates an offer and acceptance between the contracting parties.  Further, the construction contract is supported by sufficient consideration in the amount of $179,371.  Given our determination that the construction contract was properly formed and supported by sufficient consideration, we affirm the circuit court's determination on this issue, even though it was reached for the wrong reason.[9]

---

[9] *See Cadle Co. v. Citizens Nat'l Bank*, 200 W. Va. 515, 518, 490 S.E.2d 334, 337 (1997)("We believe the circuit court reached the correct result in this case, but for the wrong reasons.  We agree with the court in *Bank IV Topeka v. Topeka Bank & Trust Co.*, 15 Kan. App.2d 341, 343, 807 P.2d 686, 688 (1991) that "'"where the trial court reaches the correct result based upon the wrong reason, this [C]ourt will affirm the trial court.'" Quoting, *State v. Shehan*, 242 Kan. 127, 131, 744 P.2d 824 (1987)."); Syl. Pt. 5, *Hustead ex rel. Adkins v. Ashland Oil, Inc*., 197 W. Va. 55, 475 S.E.2d 55 (1996) ("This Court may, on appeal, affirm the judgment of the lower court when it appears that such judgment is correct on any legal ground disclosed by the record, regardless of the ground, reason or theory assigned by the lower court as the basis for its judgment." Syl. Pt. 3, *Barnett v. Wolfolk*, 149 W. Va. 246, 140 S.E.2d 466 (1965).").

## B. Unconscionabilty

The next issue we are compelled to address is the circuit court's determination that the arbitration clause was neither procedurally or substantively unconscionable. The circuit court made this determination as part of its ruling on the Respondent's motion to dismiss even though a review of the record plainly reveals that this issue was not developed by the parties below.

The circuit court correctly stated in its order the law concerning unconscionability insofar as a contract term must be both "procedurally[10] and substantively unconscionable[,][11]" *see* Syl. Pt. 9, *Brown ex rel. Brown v.Genesis*

---

[10]In syllabus point seventeen of *Brown*, we held:

> Procedural unconscionability is concerned with inequities, improprieties, or unfairness in the bargaining process and formation of the contract. Procedural unconscionability involves a variety of inadequacies that results in the lack of a real and voluntary meeting of the minds of the parties, considering all the circumstances surrounding the transaction. These inadequacies include, but are not limited to, the age, literacy, or lack of sophistication of a party; hidden or unduly complex contract terms; the adhesive nature of the contract; and the manner and setting in which the contract was formed, including whether each party had a reasonable opportunity to understand the terms of the contract.

228 W. Va. at 657, 724 S.E.2d at 261, Syl. Pt. 17.

[11] We held in syllabus point nineteen of *Brown* that:

(continued...)

14

*Healthcare Corp.,* 229 W. Va. 382, 729 S.E.2d 217 (2012) (footnote added),[12] to be found

unenforceable. The circuit court then determined that the arbitration clause was not

unconscionable, finding that there was no procedural unconscionability "looking at the

four corners of the construction agreement," and that "the terms set forth in the arbitration

provision are substantively fair." The circuit court found that there was a lack of

evidence "tending to support a foundational claim for procedural or substantive

unconscionability."

---

[11](...continued)
> Substantive unconscionability involves unfairness in the contract itself and whether a contract term is one-sided and will have an overly harsh effect on the disadvantaged party. The factors to be weighed in assessing substantive unconscionability vary with the content of the agreement. Generally, courts should consider the commercial reasonableness of the contract terms, the purpose and effect of the terms, the allocation of the risks between the parties, and public policy concerns.

228 W. Va. at 658, 724 S.E.2d at 262, Syl. Pt. 19.

[12]As this Court held in *Brown*,

> [a] contract term is unenforceable if it is both procedurally and substantively unconscionable. However, both need not be present to the same degree. Courts should apply a "sliding scale" in making this determination: the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the clause is unenforceable, and vice versa.

228 W. Va. at 658, 724 S.E.2d at 262, Syl. Pt. 20.

This Court held in syllabus points twelve and thirteen of *Brown*:

> The doctrine of unconscionability means that, because of an overall and gross imbalance, one-sidedness or lop-sidedness in a contract, a court may be justified in refusing to enforce the contract as written. The concept of unconscionability must be applied in a flexible manner, *taking into consideration all of the facts and circumstances of a particular case*.

> "An analysis of whether a contract term is unconscionable *necessarily involves an inquiry into the circumstances surrounding the execution of the contract and the fairness of the contract as a whole*." Syllabus Point 3, *Troy Mining Corp. v. Itmann Coal Co.*, 176 W. Va. 599, 346 S.E.2d 749 (1986).

228 W. Va. at 657, 724 S.E.2d at 261, Syl. Pts. 12 and 13 (emphasis added).

A circuit court's determination of unconscionability necessarily involves a fact-intensive analysis into a range of factors. *See id.; see also supra* notes 10-12. "If necessary, the trial court may consider the context of the arbitration clause within the four corners of the contract, or consider any extrinsic evidence detailing the formation and use of the contract."

*Richmond Am. Homes*, 228 W. Va. at 913, 717 S.E.2d at 129, Syl. Pt. 4, in part. Yet, the circuit court decided the issue of unconscionability in this case without the issue being fairly argued by the parties and without any factual development. Given this lack of any development below, both legally and factually, concerning unconscionability, we reverse

16

the circuit court's decision on this issue and remand for further development of the record.

## IV. Conclusion

Based upon the foregoing opinion, the decision of the circuit court is affirmed, in part, and reversed and remanded for further proceedings consistent with this opinion.

Affirmed, in part; reversed, in part, and remanded.

17